Bobby Saadian, Esq. SBN: 250377
Colin M. Jones, Esq. SBN: 265628
WILSHIRE LAW FIRM
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Tel:  (213) 381-9988
Fax: (213) 381-9989

GIRARDI | KEESE
THOMAS V. GIRARDI, State Bar No. 36603
tgirardi@girardikeese.com
HOWARD B. MILLER, State Bar No. 31392
hmiller@girardikeese.com
SAMANTHA K. GOLD, State Bar No. 314048
sgold@girardikeese.com
1126 Wilshire Boulevard
Los Angeles, California 90017
Telephone: (213) 977-0211
Facsimile: (213) 481-1554

*Attorneys for Plaintiffs, SANDRA SMITH, GERALD
BENSON, and NATASHA HAMIDI*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA SMITH; GERALD BENSON; NATASHA HAMIDI;<br><br>   Plaintiffs, on behalf of themselves and all others similarly situated,<br><br>  vs.<br><br>SABRE CORPORATION f/k/a SABRE HOLDINGS CORPORATION, a Delware corporation; SABRE GLBL, Inc.; and DOES 1 to 10 inclusive<br><br>     Defendant. | CASE NO.: 2:17-cv-05149-SVW-AFM<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br>1. BREACH OF IMPLIED CONTRACT<br>2. NEGLIGENCE<br>3. VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW CAL. BUS. & PROF. CODE § 17200 - UNLAWFUL BUSINESS PRACTICES<br>4. VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW CAL. BUS. & PROF. CODE §17200 UNFAIR |

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

BUSINESS PRACTICES
5. VIOLATION OF CALIFORNIA'S UNFAIR
   COMPETITION LAW CAL. BUS. &
   PROF. CODE §17200
   FRAUDULENT/DECEPTIVE BUSINESS
   PRACTICES
6. UNFAIR AND DECEPTIVE BUSINESS
   PRACTICES
7. CONSTITUTIONAL INVASION OF
   PRIVACY
8. NEGLIGENCE *PER SE*
9. BREACH OF COVENANT OF DUTY OF
   GOOD FAITH AND FAIR DEALING
10. VIOLATION OF STATE DATA BREACH
    ACTS

Plaintiffs, Sandra Smith, Gerald Benson, and Natasha Hamidi ("Plaintiffs"), by and through their counsel of record, on behalf of themselves and all others similarly situated bring this Class Action Complaint against Sabre Corporation ("Sabre"). Plaintiffs alleges the following on information and belief, except as to those allegations specific to Plaintiffs, as follows:

## I.    NATURE OF THE ACTION

"Security breaches could expose us to liability."

— *Sabre, SEC report dated March 31, 2017.*

1.    Hundreds of thousands of customers every year book hotel rooms using the Sabre SynXis Central Reservations system, which facilitates the booking of hotel reservations made by consumers through hotels, online travel agencies, and similar booking services. Consumers expect the highest quality of services when booking a hotel room. What consumers did not expect was that for a period between August 2016, to March 2017, for all hospitality companies that utilize the SynXis Central Reservations system ("CRS"), for a period of eight months, their information was being collected by an unauthorized third party. This is a data breach case.

SECOND AMENDED CLASS ACTION COMPLAINT

2.     Plaintiffs, individually and on behalf of those similarly situated persons (hereafter "Class Members"), bring this Class Action to secure redress against Sabre for its reckless and negligent violation of customer privacy rights. Plaintiffs and Class Members are former customers who booked hotel reservations with any of the hospitality companies that utilize the CRS in the U.S. during the period of June 2016 to March 2017.

3.     Plaintiffs and Class Members suffered injuries.  The security breach compromised hotel customers' full names, credit and debit card account numbers, card expiration dates, card verification codes, emails, phone numbers, mailing addresses, and other private identifiable information ("PII").

4.     As a result of Sabre's wrongful actions and inactions, customer information was stolen.  Many of the customers who booked hotel rooms have had their PII compromised, have had their privacy rights violated, have been exposed to the risk of fraud and identify theft, and have otherwise suffered damages.

## II.     THE PARTIES

5.     Plaintiff Sandra Smith is a California citizen residing in San Joaquin, California.

6.     Plaintiff Gerald Benson is a California citizen residing in Los Angeles, California.

7.     Plaintiff Natasha Hamidi is a California citizen residing in Los Angeles, California.

8.     Plaintiffs brings this action on their own behalf and on behalf of all others similarly situated, namely all other individuals who have made a booking at any of the hotels that use Sabre Hospitality Solutions SynXis Centre Reservations System during the period of June 2016 to March 2017.

9.     Defendant Sabre Corporation, formerly known as Sabre Holdings Corporation, is a Delaware corporation, having its principal executive offices at

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12ᵗʰ Floor
Los Angeles, CA 90010-1137

SECOND AMENDED CLASS ACTION COMPLAINT

3150 Sabre Drive, Southlake, Texas.  Sabre Corporation is the sole owner of Sabre Holdings Corporation.

10.     Defendant Sabre Holdings Corporation ("Sabre Holdings") is a Delaware corporation having principal executive offices at 3150 Sabre Drive, Southlake, Texas.  Sabre Holdings wholly owns and controls Sabre GLBL Inc., its principal operating subsidiary and sole direct subsidiary.

11.     Defendant Sabre GLBL Inc. is a Delaware corporation having principal executive offices at 3150 Sabre Drive, Southlake, Texas.

## III.    JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over the state law claims asserted here pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), since some of the Class Members are citizens of a State different from the Defendant and, upon the original filing of this complaint, members of the putative Plaintiffs class resided in states around the country; there are more than 100 putative class members; and the amount in controversy exceeds $5 million.

13.     The Court also has personal jurisdiction over the Parties because Sabre conducts a major part of their national operations with regular and continuous business activity in California, on information and belief through a number of hotels and with an advertising budget both not exceeded in other jurisdictions throughout the United States.

14.     Venue is appropriate because, among other things: (a) Plaintiffs are resident and citizen of this District; (b) the Defendants had directed their activities at residents in this District; (b) the acts and omissions that give rise to this Action took place, among others, in this judicial district.

15.     Venue is further appropriate pursuant to 28 U.S.C. § 1391 because Defendants conduct a large amount of their business in this District, and Defendants have substantial relationships in this District.  Venue is also proper in this Court

SECOND AMENDED CLASS ACTION COMPLAINT

because a substantial part of the events and omissions giving rise to the harm of the Class Members occurred in this District.

## IV.   SUBSTANTIVE ALLEGATIONS

### A.   The Data Breach Unravels

16.    Sabre operates the SynXis Central Reservations system, which facilitates the booking of hotel reservations made by individuals and companies. Sabre's SynXis reservation system serves more than 36,000 properties with 2.4 hotels added to Sabre's system every hour and with over 8 billion CRS shopping requests each month. *See* Sabre Results, available at http://www.sabrehospitality.com/.

17.    On July 5, 2017, Sabre Corporation admitted that "an unauthorized party accessed certain payment card information for a limited subset of hotel reservations processed through the SHS reservation system . . . over a seven month period from August 2016 to March 2017." *See* Sabre Update on Cybersecurity Incident, available at https://www.sabre.com/insights/releases/sabre-update-on-cybersecurity-incident/[1] (attached hereto as Exhibit A).

18.    In addition to the eight-month period, the unauthorized third-parties would have had access to booking information up to 60 days prior to the breach, as the SynXis CRS only deletes reservation details 60 days after the hotel stay. *See* June 29, 2017, Google Notice of Data Breach, *available* at https://oag.ca.gov/system/files/Google%20-%20Sabre%20Incident%20Individual%20Notification%20Letter_0.pdf? (attached hereto as Exhibit B).

19.    Not until May 2, 2017, almost ten months after the data breach began, did Sabre disclose this breach on its website. *See* May 2, 2017, Sabre Statement,

_____

[1] All cited websites were last visited on July 11, 2017.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

*available* at https://www.sabre.com/insights/releases/sabre-statement/ (attached hereto as Exhibit C).

20.    However, the disclosure is not prominently placed on Sabre Corporation's website.  Rather, Sabre inconspicuously placed a "press release" at the bottom of the "newsroom" portion of the website.

**B.    Stolen Information Is Valuable to Hackers and Thieves**

21.    It is well known, and the subject of many media reports, that payment card data is highly coveted and a frequent target of hackers.  Especially in the technology industry, the issue of data security and threats thereto, is well known. Despite well-publicized litigation and frequent public announcements of data breaches, Sabre opted to maintain an insufficient and inadequate system to protect the payment information of Plaintiffs and Class Members. Legitimate organizations and criminal underground alike recognize the value of PII.  Otherwise, they would not aggressively seek or pay for it.  As previously seen in one of the world's largest breaches, hackers compromised the card holder data of 40 million customers.  *See* "Target: 40 million credit cards compromised," CNN Money, Dec. 19, 2013, *available* at http://money.cnn.com/2013/12/18/news/companies/target-credit-card/ (attached hereto as Exhibit D).

22.    Credit or debit card information is highly valuable to hackers.  Credit and debit card information that is stolen from the point of sale are known as "dumps."  *See* Krebs on Security April 16, 2016, Blog Post, *available at* https://krebsonsecurity.com/2016/04/all-about-fraud-how-crooks-get-the-cvv/ (attached hereto as Exhibit E).  Credit and debit card dumps can be sold in the cybercrime underground for a retail value of about "$20 apiece."  *Id.*  This information can also be used to clone a debit or credit card.  *Id.*

///

///

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

**C.    The Data Breach Has and Will Result in Additional Identity Theft and Identity Fraud**

23.    Sabre failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the data breach.

24.    Security flaws and other infirmities were explicitly outlined by Visa, as early as 2009, when it issued a Data Security Alert outlining the threat of RAM scraper malware.6 The report instructs companies to "[s]ecure remote access connectivity," "[i]mplement a secure network configuration, including egress and ingress filtering to only allow the ports/services necessary to conduct business" (i.e., segregate networks), "actively monitor logs of network components, including IDS [intrusion detection systems] and firewalls for suspicious traffic, particularly outbound traffic to unknown addresses," "[e]ncrypt cardholder data anywhere it is being stored and [] implement[] a data field encryption solution to directly address cardholder data in transit" and "[w]ork with your payment application vendor to ensure security controls are in place to prevent unauthorized modification to the payment application configuration."

25.    All merchants that accept customer payments via payment cards, including Defendants, are obligated and required to comply with the Payment Card Industry Data Security Standards (the "PCI DSS"). *How to Be Compliant: Getting Started with PCI Data Security Standard Compliance*, PCI SSC, *available at* https://www. pcisecuritystandards.org/merchants/how_to_be_compliant.php (last visited June 24, 2015) (stating "[i]f you are a merchant that accepts payment cards, you are required to be complaint with the PCI [DSS]."). Compliance with the PCI DSS is common practice in the retail industry.  The PCI DSS, among other things, mandates merchants to protect cardholder data, PCI DSS v. 3.0 at 34 (Nov. 2013),7 requires merchants to install and maintain firewalls, *id.* at 19, forbids merchants from using default settings and passwords for applications and devices, *id.* at 28,

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

requires merchants to segment cardholder data, *id.* at 61, and requires merchants to identify and authenticate their system users. *Id.* at 64.

26.     Additionally, sub-requirement 3.2 of the PCI DSS requires merchants and other organizations involved in payment card transactions to refrain from storing sensitive authentication data after authorization (even if it is encrypted). *See id.* at 35. To adhere to the PCI DSS, a merchant must, *inter alia*:

> First, **Assess** -- identify cardholder data, take an inventory of your IT assets and business processes for payment card processing, and analyze them for vulnerabilities that could expose cardholder data. Second, **Remediate** -- fix vulnerabilities and do not store cardholder data unless you need it. Third, **Report** -- compile and submit required remediation validation records (if applicable), and submit compliance reports to the acquiring bank and card brands you do business with.

*How to Be Compliant: Getting Started with PCI Data Security Standard Compliance*, PCI SSC, *available at* https://www.pcisecuritystandards.org/merchants/how_to_be_compliant.php (last visited June 24, 2015) (emphasis in original).

27.     The ramifications of Sabre's failure to keep Plaintiffs' and Class Members' data secure are severe.

28.     According to Javelin Strategy and Research, "one in every three people who is notified of being a potential fraud victim becomes one . . . with 46% of consumers who had cards breached becoming fraud victims that same year." "Someone Became an Identity Theft Victim Every 2 Seconds Last Year," Fox Business, Feb. 5, 2014 *available* at http://www.foxbusiness.com/personal-finance/2014/02/05/someone-became-identitytheft-victim-every-2-seconds-last-year.html (attached hereto as Exhibit F).

29.     It is incorrect to assume that reimbursing a consumer for a financial loss due to fraud makes that individual whole again.   On the contrary, after

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems." *See* "Victims of Identity Theft," U.S. Department of Justice, Dec 2013, *available at* https://www.bjs.gov/content/pub/pdf/vit12.pdf (attached hereto as Exhibit G). In fact, the BJS reported, "resolving the problems caused by identity theft [could] take more than a year for some victims." *Id*. at 11.

**D.    Annual Monetary Losses from Identity Theft Are Billions of Dollars**

30.    Javelin Strategy and Research reports that those losses increased to $21 billion in 2013. *See* 2013 Identity Fraud Report (attached hereto as Exhibit H). There may be a time lag between when harm occurs and when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm. GAO, Report to Congressional Requesters, at 33 (June 2007), *available* at http://www.gao.gov/new.items/d07737.pdf (attached hereto as Exhibit I)

31.    Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent credit and debit card charges incurred by them and the resulting loss of use of their credit and access to funds, whether or not such charges are ultimately reimbursed by the credit card companies.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

32.     As Chief Judge Lasnik observed when sentencing a thief of PII, "identity theft can create huge emotional problems for people. We often think of bank fraud as just against a bank or just money, but it damages real people." Press Release, United States Attorney's Office, Western District of Washington, Member of ID Theft Ring That Preyed on Starbucks' Employees Sentenced to Prison (June 2, 2006), *available at* http://www.usdoj.gov/usao/waw/press/2006/jun/nguyen.htm (last visited Apr. 28, 2009). Chief Judge Lasnik also noted that the damage of identity theft isn't just financial, "it causes rifts between husbands and wives, it causes divorces." *Id.*

**E.     Plaintiffs and Class Members Suffered Damages**

33.     The data breach was a direct and proximate result of Sabre's failure to properly safeguard and protect Plaintiffs' and Class Members' PII from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and the common law, including Sabre's failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiffs' and Class Members' PII to protect against reasonably foreseeable threats to the security or integrity of such information.

34.     Plaintiffs' and Class Members' PII is private and sensitive in nature and was inadequately protected by Sabre. Sabre did not obtain Plaintiffs' and Class Members' consent to disclose their PII, except to certain persons not relevant to this action, as required by applicable law and industry standards.

35.     As a direct and proximate result of Sabre's wrongful action and inaction and the resulting data breach, Plaintiffs and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring them to take the time and effort to mitigate the actual and potential impact of the subject data breach on their lives by, among other things, placing "freezes" and "alerts" with credit reporting agencies,

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring their credit reports and accounts for unauthorized activity.

36.    As a result of this breach of security, Plaintiffs' and other Class members' debit cards and credit cards were exposed and subjected to unauthorized charges; their bank accounts were overdrawn and credit limits exceeded; they were deprived of the use of their cards and access to their funds; their preauthorized charge relationships were disrupted; they were required to expend time, energy and expense to address and resolve these financial disruptions and mitigate the consequences; they suffered consequential emotional distress; and their credit and debit card information is at an increased risk of theft and unauthorized use.

37.    Plaintiffs and Class Members were deprived of use of their cards for appreciable periods of time and were unable to access their accounts or their funds; customers lost accumulated miles and points toward bonus awards and were unable to earn points during the intervals their cards were inactivated; customers who requested that their cards be cancelled were required to pay fees to issuing banks for replacement cards; customers who had registered their cards with online sellers were required to cancel and change their registered numbers; customers who had given creditors pre-authorization to charge their debit cards or credit cards for recurring payments were required to change the pre-authorizations; customers were placed in non-payment status by virtue of their cards being overdrawn or abruptly cancelled and were required to pay penalties and service reinstatement fees; customers purchased identity theft insurance and credit monitoring services to protect themselves against possible consequences of the breach; customers suffered emotional distress as they were forced to cope with the unauthorized charges and other consequences of Defendant's' data breach, and some customers are still not aware of the data breach or that their data has been compromised.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

38.     Specifically, Plaintiff Sandra Smith has been booking hotel rooms with hotels that use Sabre's system for years, and during and after the breach, Plaintiff had fraudulent charges to credit and/or debit cards used at booking for hotels that use Sabre's CRS.   Plaintiff has to spend time and effort to constantly monitor her accounts due to the risk of fraud and identity theft.



39.     In addition, Plaintiff Gerald Benson has been booking hotel rooms with hotels that use Sabre's system for years, and during the breach, Plaintiff had stayed at several hotels and booked rooms using Sabre's CRS.  Plaintiff understands the high likelihood that he will experience fraudulent activity in the near future, and so Plaintiff has to constantly monitor his accounts due to the risk of fraud and identity theft.

40.     By failing to secure its users' PII, Sabre made email account and other PII access available to even the least capable hacker.

41.     This PII was freely published many times on the Internet, making the information available to the general public.

42.     A person's email account and/or full name and other PII act as modern day filing cabinets for a variety of interactions, transactions, and correspondence.

43.     Accordingly, access to email accounts and other PII allow wrongdoers to access private information, to access communications with third-parties, and to

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

SECOND AMENDED CLASS ACTION COMPLAINT

send false messages to other persons thereby causing reputational and financial damage to the accountholder.

**F.     Sabre's Failure to Disclose Its True Security Practices Caused Class Members To Receive Less Valuable Services Than Those They Paid For**

44.     Consumers place value in data privacy and security, and they consider it in making purchasing decisions.

45.     Further, "it is widely known among businesses that consumers are willing to pay increased prices in order to do business with merchants who better protect their privacy by following" FTC best practices. *Id.* at 5. In fact, little "research has been performed since 2004 to establish whether people value privacy, since it is widely understood that they do. Research has since shifted to examine the extent to which they value it, when balanced with other concerns, and how this changes based on specific circumstances." *Id.* at 4 n.1 (emphasis added).[2]

46.     Academic research has shown that consumers are willing to spend additional money (a premium) in exchange for "stronger privacy protections, which includes the secure storage of their personal information," and research also supports the corollary point, that consumers expect increased data security and privacy when they pay additional money for a service. *Id.* at 5-6.

47.     Consumer software and technology markets have likewise demonstrated that consumers value their privacy/security and incorporate data security practices into their purchases. For example, companies have emerged providing consumers with "cloaking services" that allow consumers to browse the

---

[2] *See also* Hann *et al.*, The Value of Online Information Privacy: An Empirical Investigation (Mar. 2003) at 2, http://www.comp.nus.edu.sg/~ipng/research/privacy.pdf (last visited Apr. 30, 2013) ("The real policy issue is not whether consumers value online privacy. It is obvious that people value online privacy.").

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

Internet anonymously for a $30 to $40 premium.[3]  Likewise, companies now offer services that, in exchange for a monthly fee, will offer online services designed to protect data privacy.[4]

48.     Because of the value consumers place on data privacy and security, services with better security practices command higher prices than those without. Indeed, if consumers did not value their data security and privacy, profit-seeking corporations (like Sabre) would have no reason to tout their privacy and security credentials to current and prospective customers. *Id.* at 48. Across all price ranges, users are more willing to pay for PII services that offer industry-standard security than services with substandard security. Further, when calculating the utility of service booking websites, consumers factor stated security practices heavily into their calculations. *Egelman* Rep. at 10-11.

49.     Research shows that consumers do not view unsecure websites as substitutes for secure networks.

50.     As a result, a service website with substandard data security and privacy protections is objectively less useful and valuable than a service website with industry-standard security protocols, and is essentially a different service entirely.

51.     Accordingly, had Sabre disclosed its lax security practices, Plaintiffs and Class Members would have viewed the cost for booking a room through them as less valuable and would either have attempted to book a room at a premium price or not at all.

---

[3] *See* Rust *et al.*, The Customer Economics of Internet Privacy, Journal of the Academy of Marketing Sciences 30, 4 (2002) at 461.
[4] *See* Simple pricing, advanced service, Safe Shepherd, https://www.safeshepherd.com/pricing (last accessed Nov. 13, 2017) (offering basic privacy protection services for free, an advanced service for $13.95 per month, and a "VIP" service for $249.95 per month); see also Identity Protection Software, Norton by Symantec, http://buy.norton.com/en-us/identity-protection-software (last accessed Apr. 30, 2013).

SECOND AMENDED CLASS ACTION COMPLAINT

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12ᵗʰ Floor
Los Angeles, CA 90010-1137

52.     In addition, Plaintiffs have suffered sufficiently concrete injuries for the purposes of Article III standing.  *See Robins v. Spokeo, Inc.*, No. 11-56843 (9th Cir. Aug. 15, 2017).  The "risk of real harm" is sufficient in this circumstance to constitute injury in fact.  *Id.*; *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 578 (1992).  The nature of a data breach makes it so that the threatened injury is "certainly impending" as opposed to merely speculative.  *Clapper v. Amnesty International USA,* 133 S. Ct. 1138, 1147-48 (2013).  The reason for that is the very nature of a data breach stems from individuals attempting to use the stolen information – this "intangible injury" has already occurred.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).  The harm in a data breach occurs to every affected individual that has had their information acquired without their consent.  Whether anticipated conduct or an anticipated injury is likely to happen after a breach is beside the point.  Just as in *Spokeo II*, the court did not suggest that "Congress's ability to recognize such injuries turns on whether they would also result in additional future injuries that would satisfy *Clapper*."  *See, e.g., Spokeo II*, 136 S. Ct. at 1553 (Thomas, J., concurring).

53.     Sabre's wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiffs' and Class Members' PII, causing them to suffer and continue to suffer economic damages and other actual harm for which they are entitled to compensation, including:

    a.    Theft of their PII;

    b.    The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals and already misused via the sale of Plaintiffs' and Class Members' information on the Internet black market;

    c.    The untimely and inadequate notification of the data breach;

    d.    The improper disclosure of their PII;

    e.    Loss of privacy;

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

15

f.   Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the data breach;

g.   Ascertainable losses in the form of deprivation of the value of their PII, for which there is a well-established national and international market;

h.   Overpayments to Sabre for booking and purchase during the subject data breach in that a portion of the price paid for such booking by Plaintiffs and Class Members to Sabre was for the costs of reasonable and adequate safeguards and security measures that would protect customers' PII, which Sabre and its affiliates did not implement and, as a result, Plaintiffs and Class Members did not receive what they paid for and were overcharged by Sabre; and

i.   Deprivation of rights they possess under the Unfair Competition Laws.

## V.   CLASS ACTION ALLEGATIONS

54.   Plaintiffs brings this action on their own behalf and pursuant to the Federal Rules of Civil Procedure Rule 23(a), (b)(2), (b)(3), and (c)(4), Plaintiffs seeks certification of a Nationwide class and a California class.  The nationwide class is initially defined as follows:

> All persons residing in the United States whose PII was disclosed in the data breach in 2016-2017 (the "Nationwide Class").

The California class is initially defined as follows:

> All persons residing in California whose PII was disclosed in the data breach in 2016-2017 (the "California Class").

55.   Excluded from each of the above Classes are Sabre, including any entity in which Sabre has a controlling interest, is a parent or subsidiary, or which

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

is controlled by Sabre, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Sabre.   Also excluded are the judges and court personnel in this case and any members of their immediate families.   Plaintiffs reserves the right to amend the Class definitions if discovery and further investigation reveal that the Classes should be expanded or otherwise modified.

56.   *Numerosity*. Fed. R. Civ. P. 23(a)(1). The members of the Classes are so numerous that the joinder of all members is impractical. While the exact number of Class Members is unknown to Plaintiffs at this time, Sabre has acknowledged that customers' PII was stolen for a period of eight months.  The disposition of the claims of Class Members in a single action will provide substantial benefits to all parties and to the Court.   The Class Members are readily identifiable from information and records in Sabre's possession, custody, or control.

57.   *Commonality*. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.   Whether Sabre owed a duty of care to Plaintiffs and Class Members with respect to the security of their personal information;

b.   Whether Sabre took reasonable steps and measures to safeguard Plaintiffs' and Class Members' personal information;

c.   Whether Sabre violated California's Unfair Competition Law by failing to implement reasonable security procedures and practices;

d.   Whether Sabre violated common and statutory law by failing to promptly notify Class Members their Private Identifiable Information had been compromised;

e.   Which security procedures and which data-breach notification procedure should Sabre be required to implement as part of any

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12ᵗʰ Floor
Los Angeles, CA 90010-1137

17

injunctive relief ordered by the Court;

f.    Whether Sabre has an implied contractual obligation to use reasonable security measures;

g.    Whether Sabre has complied with any implied contractual obligation to use reasonable security measures;

h.    Whether Sabre acts and omissions described herein give rise to a claim of negligence;

i.    Whether Sabre knew or should have known of the security breach prior to its May 2017 disclosure;

j.    Whether Sabre had a duty to promptly notify Plaintiffs and Class Members that their personal information was, or potentially could be, compromised;

k.    What security measures, if any, must be implemented by Sabre to comply with its implied contractual obligations;

l.    Whether Sabre violated California's privacy laws in connection with the acts and omissions described herein;

m.    What the nature of the relief should be, including equitable relief, to which Plaintiffs and the Class Members are entitled;

n.    Whether Sabre willfully and/or negligently violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*.; and

o.    Whether Plaintiffs and the Class are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

58.    *Typicality*. Fed. R. Civ. P. 23(a)(3).  Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' PII, like that of every other Class Member, was misused and/or disclosed by Sabre.

59.    *Adequacy of Representation*. Fed. R. Civ. P. 23(a)(4).  Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs have retained competent counsel experienced in litigation of class actions,

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

1   including consumer and data breach class actions, and Plaintiffs intend to prosecute

2   this action vigorously.  Plaintiffs' claims are typical of the claims of other members

3   of the Class and Plaintiffs has the same non-conflicting interests as the other

4   Members of the Class.  The interests of the Class will be fairly and adequately

5   represented by Plaintiffs and their counsel.

6       60.   *Superiority of Class Action*. Fed. R. Civ. P. 23(b)(3). A class action is

7   superior to other available methods for the fair and efficient adjudication of this

8   controversy since joinder of all the members of the Classes is impracticable.

9   Furthermore, the adjudication of this controversy through a class action will avoid

10  the possibility of inconsistent and potentially conflicting adjudication of the

11  asserted claims.  There will be no difficulty in the management of this action as a

12  class action.

13      61.   Damages for any individual class member are likely insufficient to

14  justify the cost of individual litigation so that, in the absence of class treatment,

15  Sabre's violations of law inflicting substantial damages in the aggregate would go

16  un-remedied.

17      62.   Class certification is also appropriate under Fed. R. Civ. P. 23(a) and

18  (b)(2), because Sabre has acted or has refused to act on grounds generally applicable

19  to the Classes, so that final injunctive relief or corresponding declaratory relief is

20  appropriate as to the Classes as a whole.

## COUNT I

## Breach of Implied Contract

(On Behalf of Plaintiffs and the Nationwide and California Classes)

23      63.   Plaintiffs incorporate the substantive allegations contained in each and

25  every paragraph of this Complaint.

26      64.   Sabre and the hotels that used Sabre's system solicited and invited

27  Plaintiffs and the members of the Class to book hotel rooms.  Plaintiffs and Class

28  Members accepted Sabre and the hotels' offers and booked hotel rooms through

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

Sabre.

65.    When Plaintiffs and Class Members booked hotel rooms through Sabre, they provided their Private Identifiable Information.  In so doing, Plaintiffs and Class Members entered into implied contracts with Sabre and the hotels that used their system pursuant to which Sabre agreed to safeguard and protect such information and to timely and accurately notify Plaintiffs and Class Members if their data had been breached and compromised.

66.    Each booking made with Sabre's system by Plaintiffs and Class Members was made pursuant to the mutually agreed-upon implied contract with Sabre and the hotels using their system under which Sabre agreed to safeguard and protect Plaintiffs' and Class Members' Private Identifiable Information and to timely and accurately notify them if such information was compromised or stolen.

67.    Plaintiffs and Class Members would not have provided and entrusted their Private Identifiable Information to Sabre in the absence of the implied contract between them and Sabre.

68.    Plaintiffs and Class Members fully performed their obligations under the implied contracts with Sabre.

69.    Sabre breached the implied contracts it made with Plaintiffs and Class Members by failing to safeguard and protect the Private Identifiable Information of Plaintiffs and Class Members and by failing to provide timely and accurate notice to them that their Private Identifiable Information was compromised as a result of the data breach.

70.    As a direct and proximate result of Sabre's breaches of the implied contracts between Sabre and Plaintiffs and Class Members, Plaintiffs and Class Members sustained actual losses and damages as described in detail above.

## COUNT II

### Negligence

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

(On Behalf of Plaintiffs and the Nationwide and California Classes)

71.    Plaintiffs repeats and fully incorporates the allegations contained in each and every paragraph of this Complaint.

72.    A special relationship exists between Defendants and the Consumer Plaintiffs and the Class.  Defendants actively solicited Consumer Plaintiffs and the other Class members to use their PII in sales transactions at Defendants' stores. When Consumer Plaintiffs and the other Class members gave their PII to Defendants to facilitate and close sales transactions, they did so with the mutual understanding that Defendants had reasonable security measures in place and Defendants would take reasonable steps to protect and safeguard the PII of Consumer Plaintiffs and the other Class members. Consumer Plaintiffs and the other Class members also gave their PII to Defendants on the premise that Defendants were in a superior position to protect against the harms attendant to unauthorized access, theft and misuse of that information.

73.    Upon accepting Plaintiffs' and Class Members' Private Identifiable Information in their respective point-of-sale systems, Sabre undertook and owed a duty to Plaintiffs and Class Members to exercise reasonable care to secure and safeguard that information from being compromised, lost, stolen, misused, and or/disclosed to unauthorized parties, and to utilize commercially reasonable methods to do so.  This duty included, among other things, designing, maintaining, and testing Sabre's security systems to ensure that Plaintiffs' and the Class Members' PII was adequately secured and protected.

74.    Sabre further had a duty to implement processes that would detect a breach of its security system in a timely manner.

75.    Sabre had a duty to timely disclose to Plaintiffs and Class Members that their Private Identifiable Information had been or was reasonably believed to have been compromised.  Timely disclosure was appropriate so that, among other things, Plaintiffs and Class Members could take appropriate measures to avoid use

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

1   of bank funds, and monitor their account information and credit reports for

2   fraudulent activity.

3       76.     Sabre breached its duty to discover and to notify Plaintiffs and Class

4   Members of the unauthorized access by failing to discover the security breach

5   within reasonable time and by failing to notify Plaintiffs and Class Members of the

6   breach until May 2017.  To date, Sabre has not provided sufficient information to

7   Plaintiffs and Class Members regarding the extent and scope of the unauthorized

8   access and continues to breach its disclosure obligations to Plaintiffs and the Class.

9       77.     Sabre also breached its duty to Plaintiffs and Class Members to

10  adequately protect and safeguard this information by knowingly disregarding

11  standard information security principles, despite obvious risks, and by allowing

12  unmonitored and unrestricted access to unsecured Private Identifiable Information.

13  Furthering its negligent practices, Sabre failed to provide adequate supervision and

14  oversight of the Private Identifiable Information with which it is entrusted, in spite

15  of the known risk and foreseeable likelihood of breach and misuse, which permitted

16  a third party to gather Plaintiffs' and Class Members' Private Identifiable

17  Information, misuse the Private Identifiable Information, and intentionally disclose

18  it to others without consent.

19      78.     Through Sabre's acts and omissions described in this Complaint,

20  including Sabre's failure to provide adequate security and its failure to protect

21  Plaintiffs' and Class Members' Private Identifiable Information from being

22  foreseeably captured, accessed, disseminated, stolen, and misused, Sabre

23  unlawfully breached its duty to use reasonable care to adequately protect and secure

24  Plaintiffs and Class Members' Private Identifiable Information during the time it

25  was within Sabre's control.

26      79.     Further, through its failure to timely discover and provide clear

27  notification of the data breach to consumers, Sabre prevented Plaintiffs and Class

28  Members from taking meaningful, proactive steps to secure their Private

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

Identifiable Information.

80.     Upon information and belief, Sabre improperly and inadequately safeguarded the Private Identifiable Information of Plaintiffs and Class Members in deviation from standard industry rules, regulations, and practices at the time of the data breach.

81.     Sabre's failure to take proper security measures to protect Plaintiffs and Class Members' sensitive PII as described in this Complaint, created conditions conducive to a foreseeable, intentional criminal act, namely the unauthorized access of Plaintiffs and Class Members' Private Identifiable Information.

82.     Sabre's conduct was grossly negligent and departed from all reasonable standards of care, including, but not limited to: failing to adequately protect the Private Identifiable Information; failing to conduct adequate regular security audits; failing to provide adequate and appropriate supervision of persons having access to Plaintiffs' and Class Members' Private Identifiable Information.

83.     Neither Plaintiffs nor the other Class Members contributed to the data breach and subsequent misuse of their Private Identifiable Information as described in this Complaint.  As a direct and proximate result of Sabre's negligence, Plaintiffs and Class Members sustained actual losses and damages as described in detail above.

## COUNT III

### Violation of California's Unfair Competition Law Cal. Bus. & Prof. Code § 17200 Unlawful Business Practices

(On Behalf of the California Class)

84.     Plaintiffs repeats and fully incorporates the allegations contained in each and every allegation of this Complaint.

85.     Sabre has violated Cal. Bus. and Prof. Code §17200 et seq. by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitute acts of "unfair

competition" as defined in Cal. Bus. Prof. Code §17200. Sabre engaged in unlawful acts and practices with respect to its services by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting Plaintiffs' and Class Members' Private Identifiable Information with knowledge that the information would not be adequately protected; and by gathering Plaintiffs' and Class Members' Private Identifiable Information in an unsecure electronic environment in violation of California's data breach statute, Cal. Civ. Code § 1798.81.5, which requires Sabre to take reasonable methods of safeguarding the Private Identifiable Information of Plaintiffs and the Class Members.

86.     In addition, Sabre engaged in unlawful acts and practices with respect to its services by failing to discover and then disclose the data breach to Plaintiffs and Class Members in a timely and accurate manner, contrary to the duties imposed by Cal. Civ. Code § 1798.82. To date, Sabre has still not provided such sufficient information to Plaintiffs and the Class Members.

87.     As a direct and proximate result of Sabre's unlawful acts and practices, Plaintiffs and the Class Members were injured and lost money or property, including but not limited to the loss of their legally protected interest in the confidentiality and privacy of their Private Identifiable Information, and additional losses described above.

88.     Sabre knew or should have known that its system had been breached and data security practices were inadequate to safeguard Class Members' Private Identifiable Information and that the risk of a data breach or theft was highly likely. Sabre's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Class Members.

89.     Plaintiffs and members of the Classes seek relief under Cal. Bus. & Prof. Code § 17200, *et. seq*., including, but not limited to, restitution to Plaintiffs and Class Members of money or property that Sabre may have acquired by means

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

SECOND AMENDED CLASS ACTION COMPLAINT

of its unlawful, and unfair business practices, restitutionary disgorgement of all profits accruing to Sabre because of its unlawful and unfair business practices, declaratory relief, attorney's fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief.

## COUNT IV

### Violation of California's Unfair Competition Law Cal. Bus. & Prof. Code §17200 Unfair Business Practices

(On Behalf of the California Class)

90.     Plaintiffs repeats and fully incorporates the allegations contained in each and every allegation of this Complaint.

91.     Sabre engaged in unfair acts and practices by soliciting and collecting Plaintiffs' and Class Members' Private Identifiable Information with knowledge that the information would not be adequately protected; while Plaintiffs' and the Class Members' Private Identifiable Information would be processed in an unsecure electronic environment.  These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and Class Members.  They were likely to deceive the public into believing their Private Identifiable Information was secure, when it was not.  The harm these practices caused to Plaintiffs and the members of the Class outweighed their utility, if any.

92.     Sabre engaged in unfair acts and practices with respect to the provision of its services by failing to enact adequate privacy and security measures and protect Class Members' Private Identifiable Information from further unauthorized disclosure, release, data breaches, and theft, and failing to timely discovery and give notice of the Data Breach.  These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and Class Members. They were likely to deceive the public into believing their Private Identifiable Information was secure, when it was not.  The harm these

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

SECOND AMENDED CLASS ACTION COMPLAINT

practices caused to Plaintiffs and the Class Members outweighed their utility, if any.

93.     As a direct and proximate result of Sabre's acts of unfair practices and acts, Plaintiffs and the members of the Class were injured and lost money or property, including but not limited to the loss of their legally protected interest in the confidentiality and privacy of their PII, and additional losses described above.

94.     Sabre knew or should have known that its systems and data security practices were inadequate to safeguard Class Members' Private Identifiable Information and that the risk of a data breach or theft was highly likely.  Sabre's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of the Class Members.

95.     The members of the Class seek relief under Cal. Bus. & Prof. Code § 17200, *et. seq*., including, but not limited to, restitution to Plaintiffs and Class Members of money or property that the Sabre may have acquired by means of its unfair business practices, restitutionary disgorgement of all profits accruing to Sabre because of its unfair business practices, declaratory relief, attorney's fees and costs (pursuant to Cal. Code Civ. Proc. §1021.5), and injunctive or other equitable relief.

## **COUNT V**

### **Violation of California's Unfair Competition Law Cal. Bus. & Prof. Code §17200 Fraudulent/Deceptive Business Practices**

(On Behalf of the California Class)

96.     Plaintiffs repeats and fully incorporates the allegations contained in each and every allegation of this Complaint.

97.     Sabre engaged in fraudulent and deceptive acts and practices by representing and advertising that it would maintain adequate data privacy and security practices and procedures to safeguard the Class Members' Private Identifiable Information from unauthorized disclosure, release, data breaches, and

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

theft; and representing and advertising that it did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of the members of the Class' Private Identifiable Information.   These representations were likely to deceive members of the public, including Plaintiffs and Class Members, into believing their Private Identifiable Information was securely stored, when it was not, and that Sabre was complying with relevant law, when it was not.

98.    Sabre engaged in fraudulent and deceptive acts and practices by omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for Class Members' Private Identifiable Information.  At the time that Class Members were booking hotel rooms with through Sabre's system or hotels that use Sabre's system, Sabre failed to disclose to Class Members that its data security systems failed to meet legal and industry standards for the protection of their Private Identifiable Information.  Plaintiffs would not have booked a hotel room with Sabre or through the hotels that use Sabre's CRS if he had known about its substandard data security practices.  These representations were likely to deceive members of the public, including Plaintiffs and the Class Members, into believing their Private Identifiable Information was secure, when it was not, and that Sabre was complying with relevant law and industry standards, when it was not.

99.    As a direct and proximate result of Sabre's deceptive practices and acts, Plaintiffs and the Class Members were injured and lost money or property, including but not limited to the loss of their legally protected interest in the confidentiality and privacy of their Private Identifiable Information, and additional losses described above.

100.   Sabre knew or should have known that its system and data security practices were inadequate to safeguard Class Members' PII and that the risk of a data breach or theft was highly likely.  Sabre's actions in engaging in the above-

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Class Members.

101.   Class Members seek relief under Cal. Bus. & Prof. Code § 17200, *et. seq.*, including, but not limited to, restitution to Plaintiffs and Class Members of money or property that Sabre may have acquired by means of its fraudulent and deceptive business practices, restitutionary disgorgement of all profits accruing to Sabre because of its fraudulent and deceptive business practices, declaratory relief, attorney's fees and costs (pursuant to Cal. Code Civ. Proc. §1021.5), and injunctive or other equitable relief.

## **COUNT VI**

### **Unfair and Deceptive Business Practices**

(On Behalf of the Nationwide Class)

102.   Plaintiffs repeats and fully incorporates the allegations contained in each and every allegation of this Complaint.

103.   Plaintiffs bring this Count individually, and on behalf of all similarly situated residents of each of the 50 States and the District of Columbia, aside from the state of California, for violations of the respective statutory consumer protection laws, as follows:

   a.   the Alabama Deceptive Trade Practices Act, Ala.Code 1975, § 8–19–1, *et seq.*;

   b.   the Alaska Unfair Trade Practices and Consumer Protection Act, AS § 45.50.471, *et seq.*;

   c.   the Arizona Consumer Fraud Act, A.R.S §§ 44-1521, *et seq.*;

   d.   the Arkansas Deceptive Trade Practices Act, Ark.Code §§ 4-88-101, *et seq.*;

   e.   the Colorado Consumer Protection Act, C.R.S.A. §6-1-101, *et seq.*;

   f.   the Connecticut Unfair Trade Practices Act, C.G.S.A. § 42-110, *et seq.*;

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

g.   the Delaware Consumer Fraud Act, 6 Del. C. § 2513, *et seq.*;

h.   the D.C. Consumer Protection Procedures Act, DC Code § 28-3901, *et seq.*;

i.   the Florida Deceptive and Unfair Trade Practices Act, FSA § 501.201, *et seq.*;

j.   the Georgia Fair Business Practices Act, OCGA § 10-1-390, *et seq.*;

k.   the Hawaii Unfair Competition Law, H.R.S. § 480-1, *et seq.*;

l.   the Idaho Consumer Protection Act, I.C. § 48-601, *et seq.*;

m.   the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1 *et seq.*;

n.   the Indiana Deceptive Consumer Sales Act, IN ST § 24-5-0.5-2, *et seq.*

o.   the Iowa Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714H.1, *et seq.*;

p.   the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq.*;

q.   the Kentucky Consumer Protection Act, KRS 367.110, *et seq.*;

r.   the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq.*;

s.   the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A, *et seq.*;

t.   the Maryland Consumer Protection Act, MD Code, Commercial Law, § 13-301, *et seq.*;

u.   the Massachusetts Regulation of Business Practices for Consumers Protection Act, M.G.L.A. 93A, *et seq.*;

v.   the Michigan Consumer Protection Act, M.C.L.A. 445.901, *et seq.*;

w.   the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.*;

x.   the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.*

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

y.    the Missouri Merchandising Practices Act, V.A.M.S. § 407, *et seq.*;

z.    the Montana Unfair Trade Practices and Consumer Protection Act of 1973, Mont. Code Ann. § 30-14-101, *et seq.*;

aa.   the Nebraska Consumer Protection Act, Neb.Rev.St. §§ 59-1601, *et seq.*;

bb.   the Nevada Deceptive Trade Practices Act, N.R.S. 41.600, *et seq.*;

cc.   the New Hampshire Regulation of Business Practices for Consumer Protection, N.H.Rev.Stat. § 358-A:1, *et seq.*;

dd.   the New Jersey Consumer Fraud Act, N.J.S.A. 56:8, *et seq.*;

ee.   the New Mexico Unfair Practices Act, N.M.S.A. §§ 57-12-1, *et seq.*;

ff.   the New York Consumer Protection from Deceptive Acts and Practices, N.Y. GBL (McKinney) § 349, *et seq.*;

gg.   the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, *et seq.*;

hh.   the North Dakota Consumer Fraud Act, N.D. Cent.Code Chapter 51-15, *et seq.*;

ii.   the Ohio Consumer Sales Practices Act, R.C. 1345.01, *et seq.*;

jj.   the Oklahoma Consumer Protection Act, 15 O.S.2001, §§ 751, *et seq.*;

kk.   the Oregon Unlawful Trade Practices Act, ORS 646.605, *et seq.*;

ll.   the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*;

mm.   the Rhode Island Deceptive Trade Practices Act, G.L.1956 § 6-13.1-5.2(B), *et seq.*;

nn.   the South Carolina Unfair Trade Practices Act, SC Code 1976, §§ 39-5-10, *et seq.*;

oo.   the South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-1, *et seq.*;

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12ᵗʰ Floor
Los Angeles, CA 90010-1137

pp.   the Tennessee Consumer Protection Act, T.C.A. § 47-18-101, *et seq.*;

qq.   the Texas Deceptive Trade Practices-Consumer Protection Act, V.T.C.A., Bus. & C. § 17.41, *et seq.*;

rr.   the Utah Consumer Sales Practices Act, UT ST § 13-11-1, *et seq.*;

ss.   the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, *et seq.*;

tt.   the Virginia Consumer Protection Act of 1977, VA ST § 59.1-196, *et seq.*;

uu.   the Washington Consumer Protection Act, RCWA 19.86.010, *et seq.*;

vv.   the West Virginia Consumer Credit And Protection Act, W.Va.Code § 46A-1-101, *et seq.*;

ww.   the Wisconsin Deceptive Trade Practices Act, WIS.STAT. § 100.18, *et seq.*; and

xx.   the Wyoming Consumer Protection Act, WY ST § 40-12-101, *et seq.*

104.   Sabre violated the statutes set forth above (collectively, the "Consumer Protection Acts") by failing to properly implement adequate, commercially reasonable security measures to protect Plaintiffs and Class Members' PII, and by allowing third parties to access Plaintiffs' and Class Members' PII.

105.   Sabre further violated the Consumer Protection Acts by failing to disclose to the consumers that its data security practices were inadequate, thus inducing consumers to book hotels rooms through Sabre and the hotels that use Sabre's CRS.

106.   Sabre's acts and/or omissions constitute fraudulent, deceptive, and/or unfair acts or omissions under the Consumer Protection Acts.

107.   Plaintiffs and other Class Members were deceived by Sabre's failure to properly implement adequate, commercially reasonable security measures to protect their PII.

108.   Sabre intended for Plaintiffs and other Class Members to rely on

Sabre to protect the information furnished to it in connection with debit and credit card transactions and/or otherwise collected by Sabre, in such manner that Plaintiffs' PII would be protected, secure and not susceptible to access from unauthorized third parties.

109. Sabre instead handled Plaintiffs' and other Class Members' information in such manner that it was compromised.

110. Sabre failed to follow industry best practices concerning data security or was negligent in preventing the Data Breach from occurring.

111. It was foreseeable that Sabre's willful indifference or negligent course of conduct in handling PII it collected would put that information at the risk of compromise by data thieves.

112. On information and belief, Sabre benefited from mishandling the PII of customers, by not taking effective measures to secure this information, and therefore saving on the cost of providing data security.

113. Sabre's fraudulent and deceptive acts and omissions were intended to induce Plaintiffs' and Class Members' reliance on Sabre's deception that their Private Information was secure.

114. Sabre's conduct offends public policy and constitutes unfair acts or practices under the Consumer Protection Acts because Sabre caused substantial injury to Class Members that is not offset by countervailing benefits to consumers or competition, and is not reasonably avoidable by consumers.

115. Sabre's acts or practice of failing to employ reasonable and appropriate security measures to protect Private Information constitute violations of the Federal Trade Commission Act, 15 U.S.C. § 45(a), which the courts consider when evaluating claims under the Consumer Protection Acts, including 815 ILCS 505/2.

116. Sabre's conduct constitutes unfair acts or practices as defined in the Consumer Protection Acts because Sabre caused substantial injury to Class

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

SECOND AMENDED CLASS ACTION COMPLAINT

members, which injury is not offset by countervailing benefits to consumers or competition and was not reasonably avoidable by consumers.

117.   Plaintiffs and other Class Members have suffered injury in fact and actual damages including lost money and property as a result of Sabre's violations of the Consumer Protection Acts.

118.   Sabre's fraudulent and deceptive behavior proximately caused Plaintiffs' and Class Members' injuries, and Sabre conducted itself with reckless indifference toward the rights of others, such that an award of punitive damages is appropriate.

119.   Sabre's failure to disclose information concerning the Data Breach directly and promptly to affected customers, constitutes a separate fraudulent act or practice in violation of the Consumer Protection Acts.

120.   Plaintiffs seek attorney's fees and damages to the fullest extent permitted under the Consumer Protection Acts, including N.Y. G.B.L. § 349(h).

## COUNT VII

### Constitutional Invasion of Privacy

(On Behalf of the California Class)

121.   Plaintiffs repeats and fully incorporates the allegations contained in each and every allegation of this Complaint.

122.   Cal. Const., Art. 1., section 1 provides that "[a]ll people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

123.   Plaintiffs and Class members had a legally protected privacy interest in the Private Identifiable Information provided to Sabre.

124.   Plaintiffs and Class Members had a reasonable expectation of privacy as to the Private Identifiable Information they provided to Sabre under the circumstances of their purchases.

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

125.   Sabre's actions and inactions amounted to a serious invasion of the protected privacy interests of Plaintiffs and Class Members.

126.   Sabre's invasion of Plaintiffs and Class Members' reasonable expectation of privacy caused Plaintiffs and Class members to suffer damages.

## COUNT VIII

### Negligence *Per Se*

 (On Behalf of Plaintiffs and the Nationwide and California Classes

127.   Plaintiffs repeats and fully incorporates the allegations contained in each and every allegation of this Complaint.

128.   Pursuant to the Federal Trade Commission Act (15 U.S.C. §45), Sabre had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII.

129.   Pursuant to the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), Sabre had a duty to protect the security and confidentiality of Plaintiffs' and Class Members' PII.

130.   Pursuant to state laws in the following 12 states, Sabre operating in those states had a duty to those respective states' Class Members to implement and maintain reasonable security procedures and practices to safeguard Plaintiffs' and Class Members' Personal Information:

a.   Arkansas: Ark. Code § 4-110-104

b.   California: Cal Civ. Code § 1798.81.5

c.   Connecticut: Conn. Gen. Stat. § 42-471

d.   Florida: Fla. Stat. § 501.171(2)

e.   Indiana: Ind. Code § 24-4.9-3.5

f.   Maryland: Md. Code. Comm. Law § 14-5303

g.   Massachusetts: Mass. Gen Laws Ch. 93H, § 3(a)

h.   Nevada: Nev. Rev. Stat. § 603A.210

i.   Oregon: Ore. Rev. Stat. § 646A.622(1)

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

j.   Rhode Island: R.I. Gen Laws § 11-49.2-2(2)

k.   Texas: Tex. Bus. & Com. Code § 521.052(a)

l.   Utah: Utah Code § 14-44-201(1)(a)

131.   Sabre breached their duties to Plaintiffs and Statewide Class Members under the Federal Trade Commission Act (15 U.S.C. § 45), Gramm-Leach-Bliley Act (15 U.S.C. § 6801), and the state reasonable data security statutes by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Personal Information.

132.   Sabre's failure to comply with applicable laws and regulations constitutes negligence *per se*.

133.   But for Sabre's wrongful and negligent breach of their duties owed to Plaintiffs and Statewide Class Members, Plaintiffs and Statewide Class Members would not have been injured.

134.   The injury and harm suffered by Plaintiffs and Statewide Class Members was the reasonably foreseeable result of Sabre's breach of their duties. Sabre knew or should have known that they were failing to meet their duties, and that Sabre's breach would cause Plaintiffs and Statewide Class Members to experience the foreseeable harms associated with the exposure of their Personal Information.

135.   As a direct and proximate result of Sabre negligent conduct, Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT IX

### Breach of the Covenant of Duty of Good Faith and Fair Dealing

(On Behalf of Plaintiffs and the Nationwide and California Classes)

136.   Plaintiffs repeats and fully incorporates the allegations contained in each and every allegation of this Complaint.

SECOND AMENDED CLASS ACTION COMPLAINT

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

137.   The law implies a covenant of good faith and fair dealing in every contract.

138.   Plaintiffs and Class Members contracted with Defendant by accepting Defendant's offers and paying for the booking of hotel room(s).

139.   Plaintiffs and Class Members performed all of the significant duties under their agreements with Defendant.

140.   The conditions required for Sabre's performance under the contract has occurred.

141.   Sabre did not provide and/or unfairly interfered with and/or frustrated the right of Plaintiffs and the Class Members to receive the full benefits under their agreement.

142.   Sabre breached the covenant of good faith and fair dealing implied in its contracts with Plaintiffs and the Class Members by failing to use and provide reasonable and industry-leading security practices.

143.   Plaintiffs and the Class Members were damaged by Sabre's  breach in that they paid for, but never received, the valuable security protections to which they were entitled, and which would have made their products and services more valuable.

## COUNT X

### Violation of State Data Breach Acts

(On Behalf of Plaintiffs and the Nationwide and California Classes)

144.   Plaintiffs repeats and fully incorporates the allegations contained in each and every allegation of this Complaint.

145.   Sabre owns, licenses and/or maintains computerized data that includes Plaintiffs' and Class Members' PII.

Sabre was required to, but failed, to take all reasonable steps to dispose, or arrange for the disposal, of records within its custody or control containing PII when the records were no longer to be retained, by shredding, erasing, or otherwise

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

1  modifying the personal information in those records to make it unreadable or

2  undecipherable through any means.

3       146.   Sabre's conduct, as alleged above, violated the data breach statutes of

4  many states, including:

5       a.  California, Cal. Civ. Code §§ 1798.80 et. seq.;

6       b.  Hawaii, Haw. Rev. Stat. § 487N-1–4 (2006);

7       c.  Illinois, 815 Ill. Comp. Stat. Ann. 530/1–/30 (2006);

8       d.  Louisiana, La. Rev. Stat. § 51:3071-3077 (2005), and L.A.C.

9          16:III.701;

10       e.  Michigan, Mich. Comp. Laws Ann. §§ 445.63, 445.65, 445.72

11          (2006);

12       f.  New Hampshire, N.H. Rev. Stat. Ann. §§ 359-C:19–C:21, 358-

13          A:4 (2006)., 332-I:1–I:610;

14       g.  New Jersey, N.J. Stat. Ann. § 56:8-163–66 (2005);

15       h.  North Carolina, N.C. Gen. Stat. §§ 75-65 (2005); as amended

16          (2009);

17       i.  Oregon, Or. Rev. Stat. §§ 646A.602, 646A.604, 646A.624 (2011);

18       j.  Puerto Rico, 10 L.P.R.A. § 4051; 10 L.P.R.A. § 4052 (2005), as

19          amended (2008);

20       k.  South Carolina, S.C. Code § 1-11-490 (2008); S.C. Code § 39-1-

21          90 (2009);

22       l.  Virgin Islands, 14 V.I.C. § 2208, et seq. (2005);

23       m.  Virginia, Va. Code Ann. § 18.2-186.6 (2008); Va. Code Ann. §

24          32.1– 127.1:05 (2011); and

25       n.  the District of Columbia, D.C. Code § 28-3851 to 28-3853 (2007)

26          (collectively, the "State Data Breach Acts").

27       147.   Sabre was required to, but failed, to implement and maintain

28  reasonable security procedures and practices appropriate to the nature and scope

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

SECOND AMENDED CLASS ACTION COMPLAINT

of the information compromised in the Data Breach.

148.   The Data Breach constituted a "breach of the security system" within the meaning of section 1798.82(g) of the California Civil Code, and other State Data Breach Acts.

149.   The information compromised in the Data Breach constituted "personal information" within the meaning of section 1798.80(e) of the California Civil Code, and other State Data Breach Acts.

150.   Like other State Data Breach Acts, California Civil Code § 1798.80(e) requires disclosure of data breaches "in the most expedient time possible and without unreasonable delay . . . ."

151.   Sabre violated Cal. Civ. Code § 1798.80(e) and other State Data Breach Acts by unreasonably delaying disclosure of the Data Breach to Plaintiffs and other Class Members, whose PII was, or was reasonably believed to have been, acquired by an unauthorized person.

152.   Upon information and belief, no law enforcement agency instructed Sabre that notification to Plaintiffs and Class Members would impede a criminal investigation.

153.   As a result of Sabre's violation of State Data Breach Acts, including Cal. Civ. Code § 1798.80, et seq., Plaintiffs and Class Members incurred economic damages, including expenses associated with monitoring their personal and financial information to prevent further fraud.

154.   Plaintiffs, individually and on behalf of the Class, seek all remedies available under Cal. Civ. Code § 1798.84 and under the other State Data Breach Acts, including, but not limited to: (a) actual damages suffered by Class Members as alleged above; (b) statutory damages for Sabre's willful, intentional, and/or reckless violation of Cal. Civ. Code § 1798.83; (c) equitable relief; and (d) reasonable attorneys' fees and costs under Cal. Civ. Code §1798.84(g).

155.   Because Sabre was guilty of oppression, fraud or malice, in that it

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

SECOND AMENDED CLASS ACTION COMPLAINT

failed to act with a willful and conscious disregard of Plaintiffs' and Class Members' rights, Plaintiffs also seek punitive damages, individually and on behalf of the Class.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all Class Members proposed in this Complaint, respectfully requests that the Court enter judgment in her favor and against Sabre as follows:

A.   For an Order certifying the Nationwide Class and California Class as defined here, and appointing Plaintiffs and her Counsel to represent the Nationwide Class and the California Class;

B.   For equitable relief enjoining Sabre from engaging in the wrongful conduct complained of here pertaining to the misuse and/or disclosure of Plaintiffs' and Class Members' Private Identifiable Information, and from refusing to issue prompt, complete, and accurate disclosures to the Plaintiffs and Class Members;

C.   For equitable relief compelling Sabre to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety and to disclose with specificity to Class Members the type of PII compromised.

D.   For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Sabre's wrongful conduct;

E.   For an award of actual damages and compensatory damages, in an amount to be determined;

F.   For an award of costs of suit and attorneys' fees, as allowable by law; and

G.   Such other and further relief as this court may deem just and proper.

## DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

1    Based on the foregoing, Plaintiffs, on behalf of themselves, and all others

2  similarly situated, hereby demand a jury trial for all claims so triable.

3

4  Dated: November 14, 2017                Respectfully Submitted,

5

6                                          /s/    *Colin M. Jones, Esq.*

7                                          ———————————————————————
                                           Colin M. Jones, Esq. SBN: 265628
8                                          Attorneys for Plaintiffs

9                                          */s/    Thomas V. Girardi, Esq.*

10                                         ———————————————————————
                                           Thomas V. Girardi, Esq. SBN: 36603
11                                         Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

SECOND AMENDED CLASS ACTION COMPLAINT