KENNETH L. CHERNOF (SBN 156187)
Kenneth.Chernof@apks.com
ALLYSON HIMELFARB (*pro hac vice*)
Allyson.Himelfarb@apks.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: 202.942.5000
Facsimile: 202.942.5999

ANGEL TANG NAKAMURA (SBN 205396)
Angel.Nakamura@apks.com
TIFFANY M. IKEDA (SBN 280083)
Tiffany.Ikeda@apks.com
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, Forty-Fourth Floor
Los Angeles, California 90017-5844
Telephone: 213.243.4000
Facsimile: 213.243.4199

*Attorneys for Defendants Sabre Corporation
and Sabre GLBL Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION

| | |
|---|---|
| SANDRA SMITH; GERALD BENSON; NATASHA HAMIDI, <br><br> Plaintiffs, on behalf of themselves individually and all others similarly situated, <br><br> v. <br><br> SABRE CORPORATION f/k/a SABRE HOLDINGS CORPORATION, a Delaware Corporation; SABRE GLBL, Inc., and DOES 1 to 10 inclusive, <br><br> Defendants. | Case No. 2:17-cv-05149-SVW-AFM <br><br> **DEFENDANTS SABRE CORPORATION AND SABRE GLBL INC.'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> Hearing Date: January 8, 2018 <br> Time: 1:30 pm <br> Place: Courtroom 10A <br> Judge: Honorable Stephen V. Wilson <br> Action Filed:  July 12, 2017 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION TO DISMISS

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on January 8, 2018, at 1:30 pm, in Courtroom 10A of this Court, located at 350 West 1st Street, Los Angeles, CA, 90012, Defendants Sabre Corporation and Sabre GLBL Inc. (collectively, "Sabre") will and hereby do move this Court to dismiss the Second Amended Complaint ("SAC") filed on November 14, 2017, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Specifically, Sabre seeks an order dismissing the SAC, this time with prejudice, because, despite this Court previously dismissing the First Amended Complaint for lack of standing and failure to state a claim, Plaintiffs fail to cure the numerous deficiencies noted and still fail to demonstrate that they have suffered a legally cognizable injury sufficient for Article III standing or that they can state any viable claim for relief. This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on November 16, 2017. This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Tiffany M. Ikeda and the exhibit attached thereto, the pleadings and papers on file herein, and such other matters as may be presented to the Court at the time of the hearing.

Dated: November 28, 2017                    ARNOLD & PORTER KAYE SCHOLER LLP


By:  /s/ Kenneth L. Chernof
Kenneth L. Chernof (SBN 156187)

*Attorneys for Defendants Sabre Corporation and Sabre GLBL Inc.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................1

FACTUAL BACKGROUND ...........................................................................3

LEGAL STANDARDS ...................................................................................4

    A.    Dismissal Under Fed. R. Civ. P. 12(b)(1) .................................4

    B.    Dismissal Under Fed. R. Civ. P. 12(b)(6) .................................4

ARGUMENT ...................................................................................................5

I.     PLAINTIFFS LACK ARTICLE III STANDING .............................5

    A.    The Named Plaintiffs Allege No Injury-In-Fact ......................5

        1.    Plaintiff Hamidi ............................................................5

        2.    Plaintiff Benson .............................................................5

        3.    Plaintiff Smith ................................................................7

    B.    This Court Should Disregard, or in the Alternative, Reject, The Generalized Assertions of Harm ................................9

    C.    Plaintiffs Add No Substantive Allegations Demonstrating Traceability ...........................................................14

    D.    Plaintiffs Fail to Demonstrate Redressability .........................15

II.    PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ...................................................15

    A.    Plaintiffs' Amended Negligence Claim Remains Insufficiently Pled ...............................................................16

    B.    The Remaining Nine Claims are Identically Pled to the Previously Dismissed Claims .............................................17

CONCLUSION ...............................................................................................22

1

# TABLE OF AUTHORITIES

2

Page(s)

3   **FEDERAL CASES**

4   *Adams v. United of Omaha Life Ins. Co.*,
5       No. SACV 12-969-JST, 2013 WL 12113225
        (C.D. Cal. Jan. 10, 2013) ...................................................................... 6, 7
6

7   *In re Adobe Sys. Inc. Privacy Litig.*,
        66 F. Supp. 3d 1197 (N.D. Cal. 2014)............................................. 13, 21
8

9   *Alonso v. Blue Sky Resorts, LLC*,
        179 F. Supp. 3d 857 (S.D. Ind. 2016)...................................................... 7

10  *Ashcroft v. Iqbal*,
11      556 U.S. 662 (2009)................................................................ 4, 5, 20, 21

12  *Baba v. Hewlett-Packard Co.*,
13      No. C 09-05946 RS, 2010 WL 2486353 (N.D. Cal. June 16, 2010)..................... 20

14  *In re Barnes & Noble Pin Pad Litig.*,
15      No. 12-CV-08617, 2016 WL 5720370 (N.D. Ill. Oct. 3, 2016)........................... 21

16  *Bates v. United Parcel Serv., Inc.*,
        511 F.3d 974 (9th Cir. 2007) ................................................................ 15
17

18  *Bell Atl. Corp. v. Twombly*,
        550 U.S. 544 (2007).......................................................................... 4, 21
19

20  *Benay v. Warner Bros. Entm't, Inc.*,
        607 F.3d 620 (9th Cir. 2010) ................................................................ 17

21  *Clapper v. Amnesty Int'l USA*,
22      568 U.S. 398 (2013)............................................................................. 4

23  *Corona v. Sony Pictures Entm't, Inc.*,
24      No. 14-CV-09600 RGK (EX), 2015 WL 3916744
        (C.D. Cal. June 15, 2015) .................................................................... 18
25

26  *D'Lil v. Best Western Encina Lodge & Suites*,
        538 F.3d 1031 (9th Cir. 2008) ................................................................ 4
27

28

*DeBons v. Globus Med., Inc.*,
No. 2:13-CV-08518-SVW-FFMX, 2014 WL 12495351 (C.D. Cal.
Aug. 8, 2014), *aff'd*, 668 F. App'x 258 (9th Cir. 2016) .........................................18

*Driscoll v. Trump Int'l Hotels Mgmt. LLC*,
No. 3:15-cv-1089, 2015 WL 6445198 (S.D. Ill. Oct. 2, 2015) ...........................11

*Dugas v. Starwood Hotel & Resorts Worldwide, Inc.*,
No. 3:16-cv-00014-GPC-BLM, 2016 WL 6523428
(S.D. Cal. Nov. 3, 2016) ....................................................................................9, 15, 21

*Engl v. Nat'l Grocers by Vitamin Cottage, Inc.*,
No. 15-CV-02129, 2016 WL 8578096 (D. Colo. June 20, 2016) ...........................8

*Engl v. Nat'l Grocers by Vitamin Cottage, Inc.*,
No. 15-CV-02129, 2016 WL 8578252 (D. Colo. Sept. 21, 2016) .....................7, 8

*Fernandez v. Leidos, Inc.*,
127 F. Supp. 3d 1078 (E.D. Cal. 2015) ...............................................................10

*Green v. eBay Inc.*,
No. CIV.A. 14-1688, 2015 WL 2066531 (E.D. La. May 4, 2015) .......................10

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
613 F. Supp. 2d 108 (D. Me. 2009), *aff'd in part, rev'd in part on*
*other grounds sub nom. Anderson v. Hannaford Bros. Co.*, 659 F.3d
151 (1st Cir. 2011) ..................................................................................................8

*Hovsepian v. Apple, Inc.*,
No. 08-5788 JF (PVT), 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) ...............22

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...............................................................17

*Janney v. Mills*,
944 F. Supp. 2d 806 (N.D. Cal. 2013) ..................................................................21

*Katz v. Pershing, LLC*,
672 F.3d 64 (1st Cir. 2012) ...................................................................................18

*Kearns v. Ford Motor Co.*,
567 F. 3d 1120 (9th Cir. 2009) .............................................................................21

*Khan v. Children's Nat'l Health Sys.*,
188 F. Supp. 3d 524 (D. Md. 2016) ..........................................................10, 11, 12

- iii -

*Krottner v. Starbucks Corp.*,
  628 F.3d 1139 (9th Cir. 2010) ......................................................... 4, 14

*Kuhns v. Scottrade, Inc.*,
  868 F. 3d 711 (8th Cir. 2017) ....................................................... 8, 18, 20

*Lewert v. P.F. Chang's China Bistro, Inc.*,
  819 F.3d 963 (7th Cir. 2016) .............................................................. 12

*Longenecker-Wells v. Benecard Servs. Inc*,
  No. 15-3538, 658 F. App'x 659 (3d Cir. 2016)...................................... 18

*Lovell v. P.F. Chang's China Bistro, Inc.*,
  No. C14-1152-RSL, 2015 WL 4940371 (W.D. Wash. Mar. 27, 2015) ................ 18

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012)................................................ 18

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)................................................................. 4, 14, 15

*McKenna v. WhisperText*,
  No. 5:14-cv-00424-PSG, 2015 WL 5264750
  (N.D. Cal. Sept. 9, 2015) ............................................................. 6, 7

*Patton v. Experian Data Corp.*,
  No. SACV 15-1871-JVS, 2016 WL 2626801
  (C.D. Cal. May 6, 2016) ................................................................... 6

*Remijas v. Neiman Marcus Grp., LLC*,
  794 F.3d 688 (7th Cir. 2015) ............................................................. 12

*Resnick v. AvMed, Inc.*,
  693 F. 3d 1317 (11th Cir. 2012) ......................................................... 14

*Robins v. Spokeo, Inc.*,
  No. 11-56843, 2017 WL 3480695 (9th Cir. Aug. 15, 2017)......................... 13

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
  45 F. Supp. 3d 14 (D.D.C. 2014)...................................................... 10, 12

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  996 F. Supp. 2d 942 (S.D. Cal. 2014) (*Sony II*) ................................ 13, 21

- iv -

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)..................................................................................4, 13, 14

*Stollenwerk v. Tri-West Health Care All.*,
  254 F. App'x 664 (9th Cir. 2007) .......................................................................... 14

*In re SuperValu, Inc.*,
  870 F. 3d 763 (8th Cir. 2017) ..................................................................................7

*Susan B. Anthony List v. Driehaus*,
  134 S. Ct. 2334 (2014)..............................................................................................4

*Svenson v. Google, Inc.*,
  No. 13-CV-04080, 2016 WL 8943301 (N.D. Cal. Dec. 21, 2016) ........................ 13

*Torres v. Wendy's Co.*,
  195 F. Supp. 3d 1278 (M.D. Fla. 2016) ...................................................................8

*In re VTech Data Breach Litig.*,
  No. 15-CV-10889, 2017 WL 2880102 (N.D. Ill. July 5, 2017) ...............................8

*Warth v. Seldin*,
  422 U.S. 490 (1975)................................................................................................ 10

*Whalen v. Michael Stores Inc.*,
  153 F. Supp. 3d 577 (E.D.N.Y. 2015) .....................................................................8

*Whalen v. Michaels Stores, Inc.*,
  No. 16-260 (L), 2017 WL 1556116 (2d Cir. May 2, 2017) ..............................7, 16

*In re Zappos.com, Inc.*,
  108 F. Supp. 3d 949 (D. Nev. 2015) ......................................................6, 10, 11, 13

**STATE CASES**

*Drum v. San Fernando Valley Bar Ass'n*,
  182 Cal. App. 4th 247 (2010) ................................................................................ 21

*Harm v. Frasher*,
  181 Cal. App. 2d 405 (1960) ................................................................................. 18

*J'Aire Corp. v. Gregory*,
  24 Cal. 3d 799 (1979) ............................................................................................ 16

- v -

*Quiroz v. Seventh Ave. Ctr.*,
   140 Cal. App. 4th 1256 (2006) ................................................................. 18

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ......................................................................... 21

*Windham at Carmel Mountain Ranch Ass'n v. Superior Court*,
   109 Cal. App. 4th 1162 (2003) .............................................................. 17

**STATUTES, RULES AND REGULATIONS**

Cal. Bus. & Prof. Code § 17204 ................................................................. 19

Cal. Civ. Code § 1798.81.5 ........................................................................ 20

Cal. Civ. Code § 1798.82 ..................................................................... 19, 20

Cal. Civ. Code § 1798.82(a) ................................................................. 19, 20

Cal. Civ. Code § 1798.84 ........................................................................... 20

Fed. R. Civ. P. 12(b)(1) ......................................................................... 3, 4

Fed. R. Civ. P. 12(b)(6) ................................................................. 1, 3, 4, 15

**OTHER AUTHORITIES**

Article III of the United States Constitution ...................................... passim

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

On October 23, 2017, this Court dismissed the First Amended Complaint ("FAC") for lack of Article III standing and for failure to state a claim pursuant to Rule 12(b)(6).  Order Regarding Motion to Dismiss, ECF 30 ("Order").  Plaintiffs have now filed a Second Amended Complaint ("SAC") in an apparent attempt to cure the numerous deficiencies identified by the Court.  But as the attached redline shows, Plaintiffs make only a handful of non-substantive revisions, many of them downright puzzling, to the previously dismissed Complaint.  *See* Redline Comparing SAC to FAC, attached to the Declaration of Tiffany M. Ikeda as Exhibit A.  Far from resuscitating their claims, those revisions, summarized below, confirm that this case should now be dismissed with prejudice:

- The SAC adds a new Plaintiff, Natasha Hamidi, but aside from the fact that she resides in Los Angeles, CA (SAC ¶ 7), the SAC contains *zero* allegations specific to her.  *Not one.*  There are no allegations tying Hamidi to the security incident here or to the conduct of Sabre whatsoever, one of several aspects of the SAC raising serious questions about compliance with pre-filing responsibilities.

- In Paragraphs 38 and 39, previously-named plaintiffs Sandra Smith and Gerald Benson have merely *deleted* the allegations that previously doomed their claims—namely, that Smith admitted that she canceled her cards following the security incident (such that there could be no future risk to them) and that Benson conceded that he had not experienced any fraudulent charges (such that nothing has happened to him at all).  They pretend as if they did not make these previously fundamental allegations.  But even if that were in any way proper, it is of no moment here because Plaintiffs do not allege that Smith did *not* cancel her cards or that anything *has* happened to Benson since the incident.

- In Paragraphs 24 to 26, Plaintiffs add allegations referencing some general data security matters.  But they do not bear in any way on whether the three

Plaintiffs have suffered any actionable impact, nor do Plaintiffs even attempt to tie them to the conduct of Sabre or to the security incident here.

- In Paragraphs 32, 36, and 37, Plaintiffs add allegations speculating about virtually every *theoretical* harm one could imagine in the wake of a security incident (including that identify theft can lead to "rifts between husbands and wives [and even] divorce"!).  But Plaintiffs do not allege that any of these harms happened to Plaintiffs specifically, much less in a way that bears any connection to Sabre.

- Similarly, in Paragraphs 40 to 43, Plaintiffs add allegations speculating the *theoretical* possibility that a bad actor might access email accounts.  But once again, not one of the named Plaintiffs alleges that his or her email account has been accessed, that he or she provided an email address or email account password when booking hotels, or offers any facts that would plausibly suggest that email accounts are now at risk.

- In Paragraphs 44 to 51, Plaintiffs add general allegations about the premiums some customers might *theoretically* be willing to pay for security (citing various unrelated reports), but these allegations say nothing of how the individual Plaintiffs view security, particularly in the context of purchasing hotel rooms where other numerous drivers are at play, and further rely on the hypothetical, and highly implausible, theory that the higher priced a hotel room, the greater the security of the hotel's third-party vendor.

- In Paragraph 72, Plaintiffs make a strained attempt to demonstrate a "special relationship" with Sabre that would allow Plaintiffs to avoid the economic loss doctrine under their claim of negligence.  But the facts alleged specifically and clearly refer to a special relationship in the context of a transaction with a retailer *at a brick and mortar store*.  As Plaintiffs correctly allege elsewhere, Sabre is a digital-only platform.  It does not have brick and mortar stores. Again, questions arise regarding satisfying pre-filing obligations before

NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT, CASE NO. 2:17-cv-05149-SVW-AFM

1    availing themselves of this Court.

2        The remaining paragraphs of the SAC, including those in support of the other nine

3    claims, are virtually identical to the previously dismissed FAC and do not address the many

4    deficiencies that the Court has already identified.  This is so despite the fact that on several

5    occasions Plaintiffs represented to the Court that they could or would cure the deficiencies

6    through amendment.  Accordingly, Sabre again moves for dismissal pursuant to Rules

7    12(b)(1) and 12(b)(6) and respectfully requests that the Court dismiss the SAC with

8    prejudice.

9                                  **FACTUAL BACKGROUND**

10       Defendant Sabre Corporation is a global technology company that provides a broad

11   range of services and technology to the travel and tourism industry.  One of Sabre's

12   business segments serves the hospitality industry specifically, and offers to its hospitality

13   clients technology called the "SynXis Central Reservations System" ("SynXis CR").

14   SAC ¶ 16.  SynXis CR is a web-based computer platform that provides connections for

15   hotels to distribution channels, *id.*, (including global distribution systems, which are used

16   by travel agencies, and online travel agencies such as Expedia) and permits hoteliers to

17   manage their room availability, pricing, and inventory.

18       On May 2, 2017, Sabre published notice that it was investigating an incident of

19   unauthorized access to payment card information for a subset of hotel reservations

20   processed through the SynXis CR.  SAC Ex. C.  Sabre engaged a cybersecurity expert to

21   investigate the incident, and notified law enforcement and its hospitality customers.  *Id.*

22   On July 5, 2017, Sabre published an update confirming that "an unauthorized party

23   accessed certain payment card information for a limited subset of hotel reservations

24   processed through the [SynXis CR] system" from August 2016 to March 2017.  *Id.* ¶ 17 &

25   Ex. A.  It further explained that not all reservations accessed included a payment card

26   security code, as a large percentage of bookings were made without a security code being

27   provided.  FAC Ex. A.  In addition, other reservations were processed without using

28   consumer credit cards.  *Id.*  Finally, Sabre confirmed that no personal information such as

- 3 -

NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT, CASE NO. 2:17-cv-05149-SVW-AFM

1  social security, passport or driver's license numbers were accessed.  *Id.*

2       Plaintiffs filed suit following disclosure of the incident.

3                              **LEGAL STANDARDS**

4       **A.    Dismissal Under Fed. R. Civ. P. 12(b)(1)**

5       Plaintiffs bear the burden of establishing their standing to invoke the subject matter

6  jurisdiction of this Court.  *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031,

7  1036 (9th Cir. 2008).  To do so, Plaintiffs must satisfy the "case or controversy"

8  requirement of Article III of the United States Constitution, which requires a plaintiff to

9  establish injury-in-fact that is (1) concrete and particularized as well as actual or imminent;

10  (2) fairly traceable to the challenged action of the defendant; and (3) redressable by a

11  favorable ruling from the court.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

12  An injury-in-fact must be concrete, particularized, and "actual or imminent" rather than

13  speculative.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S.

14  at 560).  If based on threatened future injury, that injury must be "certainly impending," or

15  there must be a "'substantial risk' that the harm will occur."  *Susan B. Anthony List v.*

16  *Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S.

17  398, 414 n.5 (2013)).  The Ninth Circuit demands that data breach plaintiffs demonstrate

18  that they face a "credible threat of real and immediate harm" stemming from the incident.

19  *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1143 (9th Cir. 2010).

20       **B.    Dismissal Under Fed. R. Civ. P. 12(b)(6)**

21       To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6),

22  a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

23  relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

24  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plausibility standard "asks for

25  more than a sheer possibility that a defendant has acted unlawfully," *Twombly*, 550 U.S. at

26  556, and requires "enough fact[s] to raise a reasonable expectation that discovery will

27  reveal evidence of [the alleged misconduct]," *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550

28  U.S. at 556).  Where a court is unable to infer more than the mere possibility of the alleged

- 4 -

NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT, CASE NO. 2:17-cv-05149-SVW-AFM

misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. *Id.* at 678-79.

## ARGUMENT

## I.   PLAINTIFFS LACK ARTICLE III STANDING

### A.   The Named Plaintiffs Allege No Injury-In-Fact

The Court previously held that the original two Plaintiffs, Benson and Smith, lacked Article III standing, concluding that "[n]either of the two Plaintiffs can allege a cognizable injury-in-fact." Order at 3.  As discussed below, the paltry changes Plaintiffs make to the SAC do nothing to alter this conclusion.

### 1.   Plaintiff Hamidi

First and foremost, the SAC adds a brand new plaintiff, Natasha Hamidi. However, other than alleging she is a resident of Los Angeles County, the SAC does not make a single allegation about her. There is no allegation that she made any hotel reservations, much less through the use of SynXis, much less that her information was compromised, much less that she was impacted in any way, much less that she suffered an injury-in-fact fairly traceable to Sabre, much less that….etc. She is, in 100% totality, merely a resident of Los Angeles.  In the motion to dismiss the FAC, Sabre suggested the Court might wonder why Plaintiff Benson (who admitted he had suffered no impact) was named at all other than improperly to manufacture venue.  Hamidi stands in an even worse posture.  It was obvious from the Court's prior Order dismissing this case that the law requires factual allegations that establish standing and that satisfy the elements of each cause of action.  Hamidi's allegations—or rather, her complete absence of allegations—simply flout the Court's Order and basic pleading requirements.

### 2.   Plaintiff Benson

The Court dismissed Plaintiff Benson's claims for lack of standing after concluding that his allegations "confirm[] that nothing has happened to him." Order at 3.  In so holding, the Court relied on the fact that Benson admitted that he

"has not had a fraudulent charge in his credit or debit cards," *id.* (quoting FAC ¶ 33), among other reasons.  The only difference in the SAC is that Benson has now *deleted* his previous affirmative admission, pleaded as a basis to prosecute this case, about not having experienced any fraudulent charges.  *See* Ex. A ¶ 39. But the allegation has not gone away simply through use of the "delete" key—it is still there.  Indeed, "[w]hile a district court must accept a plaintiff's allegations as true in ruling on a motion to dismiss, it need not accept these allegations where they contradict what was alleged in a prior Complaint."  *Adams v. United of Omaha Life Ins. Co.*, No. SACV 12-969-JST (JPRx), 2013 WL 12113225, at *3 (C.D. Cal. Jan. 10, 2013); *see also McKenna v. WhisperText*, No. 5:14-cv-00424-PSG, 2015 WL 5264750, at *3 (N.D. Cal. Sept. 9, 2015) (despite allegations being deleted from amended complaint, granting motion to dismiss where deficiency of claims was "undeniable from [plaintiff's] previous allegations").  In any event, Benson concedes this allegation is still as true now as it was then, because he does not replace the deleted allegation with an allegation that he *has* experienced any fraudulent activity.  Nor does he now claim that anything whatsoever has happened to him following the security incident or any basis to contend that he is now at a risk of future fraud or identity theft.  He still fails to allege the information he contends was impacted in the security incident, the hotels at which he stayed, or when, any facts to plausibly allege that those hotels used SynXis CR for his booking, or that any of those hotels were among those impacted by the incident. Benson thus again fails to allege anything but a "speculative fear of fraud and identity theft" that this Court previously found deficient for Article III standing. Order at 3.  Accordingly, the same infirmities plague his claims and Benson's claims should be dismissed yet again.[1]

---

[1] *See, e.g.*, *Patton v. Experian Data Corp.*, No. SACV 15-1871-JVS (PLAx), 2016 WL 2626801, at *4 (C.D. Cal. May 6, 2016) (plaintiffs must allege "at minimum, that their personal information was in fact accessed by an identity thief."); *In re*

(Footnote Cont'd on Following Page)

- 6 -

NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT, CASE NO. 2:17-cv-05149-SVW-AFM

### 3.   Plaintiff Smith

As for Plaintiff Smith, the Court likewise held that she failed to suffer any cognizable injury-in-fact for purposes of establishing Article III standing.  Order at 4.  Like Benson, Smith's allegations in the SAC do nothing to alter this conclusion. Indeed, Smith's allegations in the SAC are virtually identical to the FAC except that she too now *deletes* a prior allegation—specifically, she strikes her prior admission that she "canceled every debit and credit card that she used to book hotels."  *See* Ex. A ¶ 38.  But she also cannot selectively delete allegations from a prior complaint to avoid dismissal of an amended complaint.  *Adams*, 2013 WL 12113225, at *3; *McKenna*, 2015 WL 5264750, at *3.  Nor does she make any attempt to allege that she did not cancel all of the potentially relevant payment cards.

As set forth at length in Sabre's motion to dismiss the FAC (ECF No. 24), the fact that Smith admitted that she cancelled her cards was fatal to her claims because it meant that there could be no future risk to those accounts and nothing to "constantly monitor" them for.  *See Whalen v. Michaels Stores, Inc.*, No. 16-260 (L), 2017 WL 1556116, at *2 (2d Cir. May 2, 2017) (plaintiff simply "[cannot] plausibly face a threat of future fraud" where her "stolen credit card was promptly cancelled after the breach and no other personally identifying information—such as her birth date or Social Security number—is alleged to have been stolen"); *Alonso v. Blue Sky Resorts, LLC*, 179 F. Supp. 3d 857, 864 (S.D. Ind. 2016) ("[B]ecause the cards have been cancelled, future risk of injury is essentially nonexistent."); *Engl v. Nat'l Grocers by Vitamin Cottage, Inc.*, No. 15-CV-02129, 2016 WL 8578252, at *6 (D. Colo. Sept. 21, 2016) (upon cancellation of credit card,

(Footnote Cont'd From Previous Page)
*Zappos.com, Inc.*, 108 F. Supp. 3d 949, 959 (D. Nev. 2015) ("Plaintiffs here make no allegations that their data has appeared in any place where others might obtain and misuse it."); *In re SuperValu, Inc.*, 870 F. 3d 763, 771 (8th Cir. 2017) ("[B]ecause plaintiffs have not alleged a substantial risk of future identity theft, the time they spent protecting themselves against this speculative threat cannot create an injury.").

- 7 -

exposure to future harm was "decisively extinguished").  Plaintiff cannot simply un-ring this bell and pretend that her prior admission does not exist.

But even setting aside the impropriety of deleting her prior allegation, Smith still fails to allege any facts that would alter the Court's prior conclusion that that she lacks standing.  Smith still "does not allege that she incurred any monetary losses from the charges themselves" and "therefore cannot assert an injury to the alleged fraudulent charges."  Order at 4.  That is so because "mere fraudulent charges on debit or credit cards do not rise to the level of actual identity theft sufficient to establish standing." *Torres v. Wendy's Co.*, 195 F. Supp. 3d 1278, 1282 (M.D. Fla. 2016).[2]  In addition, the Court already rejected Smith's claimed injury in the form of "time and effort" to address the fraudulent activity, because "[d]espite the possible 'apprehension and inconvenience' that may accompany a data breach, a plaintiff lacks standing where she identifies no repercussions of the incident 'other than his own remedial efforts.'"  Order at 4 (quoting *Engl*, 2016 WL 8578096, at *6).[3]

Finally, Smith still does not offer facts plausibly demonstrating that she is at risk of future identity theft.  Although the SAC now adds allegations referencing some theoretical

[2] *See also Whalen v. Michael Stores Inc.*, 153 F. Supp. 3d 577, 580-81 (E.D.N.Y. 2015), *aff'd sub nom. Whalen v. Michaels Stores, Inc.*, No. 16-260 (L), 2017 WL 1556116 (2d Cir. May 2, 2017) (allegations of fraudulent activity with no associated monetary loss "do not confer standing"); *see also Engl v. Nat'l Grocers by Vitamin Cottage, Inc.*, No. 15-CV-02129, 2016 WL 8578096, at *6 (D. Colo. June 20, 2016) (no standing where plaintiff alleged only "unspecified fraudulent activity on his Visa card" but failed to allege "that his credit card company refused to reverse the[ ] charges or that he was held ultimately financial liable for them"), *report and recommendation adopted*, 2016 WL 8578252 (D. Colo. Sept. 21, 2016).

[3] *See also In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 613 F. Supp. 2d 108, 134 (D. Me. 2009), *aff'd in part, rev'd in part on other grounds sub nom. Anderson v. Hannaford Bros. Co.*, 659 F.3d 151 (1st Cir. 2011) (taking "time and effort" to cancel a credit card is simply "the ordinary frustrations and inconveniences that everyone confronts in daily life with or without [unlawful conduct]"); *In re VTech Data Breach Litig.*, No. 15-CV-10889, 2017 WL 2880102, at *5 (N.D. Ill. July 5, 2017) ("To the extent plaintiffs allege a nonzero amount of time or money spent to protect themselves from future harm, those efforts do not qualify as actual injuries and do not support Article III standing"); *see also Kuhns v. Scottrade, Inc.*, 868 F. 3d 711,718 (8th Cir.  2017) ("massive class action litigation should be based on more than allegations of worry and inconvenience").

or hypothetical "access to email accounts" in an apparent attempt to demonstrate some other avenue of future harm, SAC ¶¶ 42-43, she does not allege that *she* provided an email address—much less an email account password—during the course of her hotel bookings; that *her* email account has been accessed; or any facts plausibly explaining how *her* email account is now at risk.  Thus, absent specific allegations as to why the unauthorized person's alleged possession of Smith's information exposes her to a substantial and concrete risk of future identity theft, she lacks standing based on that risk.  *See Dugas v. Starwood Hotel & Resorts Worldwide, Inc.*, No. 3:16-cv-00014-GPC-BLM, 2016 WL 6523428, at *5 (S.D. Cal. Nov. 3, 2016) ("[B]ecause the PII stolen was limited only to Plaintiff's name, address, and credit card information, and because the credit card has since been cancelled, the Court finds that Plaintiff has not sufficiently alleged the credible threat of future identity theft needed in order to plead injury in fact for his causes of action.").

Accordingly, the SAC does nothing to alter the Court's conclusion that "Smith does not plausibly allege a future risk of fraud or identity theft."  Order at 4.  Nor does it provide any basis for Smith to recover for time spent "constantly monitoring" accounts for something that will never come to pass.  Finally, Smith fails to allege any expenses attributable to monitoring her accounts for fraudulent activity or identity theft.

\* \* \*

Because none of the three Plaintiffs alleges any present or credible future harm that has occurred to them specifically, each lacks Article III standing.

### B.   This Court Should Disregard, or in the Alternative, Reject, The Generalized Assertions of Harm

As discussed above, the SAC contains only two paragraphs that address the individual experiences of Plaintiffs Smith and Benson (there are none for Plaintiff Hamidi), and these allegations demonstrate that Plaintiffs have experienced no present or likely future injuries.  Throughout the remainder of the SAC, Plaintiffs allege a grab-bag of imagined harms.  But Plaintiffs do not allege that any of these harms were experienced by the Plaintiffs before this Court.  It is Plaintiffs who carry the burden of demonstrating that they *themselves* have suffered injury sufficient for Article III standing, "not that injury has been suffered by other,

- 9 -

1  unidentified members of the class to which plaintiffs belong and which they purport to

2  represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975). Thus, the Court need not consider

3  these general allegations in the first instance. However, even if it does, there are numerous

4  reasons for the Court to reject them:

5      **a. *The Kitchen Sink of Financial and Emotional Woes*.** In Paragraphs 32, 36, and

6  37 (each added to the SAC), Plaintiffs have lobbed in miscellaneous allegations regarding

7  virtually every type of harm that one could imagine in the wake of a security breach. These

8  run the gamut from bank accounts being overdrawn, credit limits exceeded, the loss of

9  accumulated miles and points, fees charged to obtain replacement cards, emotional distress,

10  and even marital strife. But not one Plaintiff alleges any of these things happened to him or

11  her specifically, and it is now apparent that they cannot make any such allegations. We are

12  now, after all, on the third complaint in this case. Neither Benson nor Hamidi provides any

13  basis to contend their information was even impacted. And Smith's failure to allege that

14  she experienced any financial harms is particularly striking in light of this Court's

15  conclusion that Smith had not alleged any "monetary loss" attributed to the security

16  incident, putting Smith on specific notice of the deficiency of her claims. Order at 4.

17      **b. *Deprivation of Value*.** Plaintiffs claim they and the putative class members have

18  been "depriv[ed] of the value of their [personally identifiable information], for which there

19  is a well-established national and international market." SAC ¶ 53(f). But absent any

20  allegation that they want to sell their financial information to someone else (which would be

21  absurd, given that they are suing over the alleged disclosure of that very information),

22  deprivation of value is not a cognizable form of injury. *See Khan v. Children's Nat'l Health*

23  *Sys.*, 188 F. Supp. 3d 524, 533 (D. Md. 2016) (plaintiff "does not, however, explain how the

24  [cyber thief's] possession of that information has diminished its value, nor does she assert

25  that she would ever actually sell her own personal information").[4]

---

26  [4] *Accord Fernandez v. Leidos, Inc.*, 127 F. Supp. 3d 1078, 1088-89 (E.D. Cal. 2015); *In re*

27  *Zappos.com, Inc.*, 108 F. Supp. 3d at 954; *In re Sci. Applications Int'l Corp. (SAIC)*
*Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 30 (D.D.C. 2014); *Green v. eBay Inc.*,

28  No. CIV.A. 14-1688, 2015 WL 2066531, at *5 n.59 (E.D. La. May 4, 2015).

1       **c. *Overpayment*.**  Plaintiffs allege that they overpaid Sabre "for booking and

2   purchase" "in that a portion of the price paid for such booking . . . was for the costs of

3   reasonable and adequate safeguards and security measures that would protect customers'

4   PII."  SAC ¶ 53(h).  Plaintiffs allege that Sabre did not implement these measures and "as a

5   result, Plaintiffs and Class Members did not receive what they paid for and were

6   overcharged by Sabre."  *Id.*  In the SAC, Plaintiffs add new allegations in an attempt to

7   bolster their overpayment theory by citing various general studies that supposedly show the

8   value that consumers place on security and thus the willingness to pay a premium for

9   added security.  SAC ¶¶ 44-51.[5]

10      These reports have nothing to do with the Plaintiffs here and, of course, therefore

11  say nothing of how the individual Plaintiffs themselves value security or how that view

12  factored into their decisions to purchase or reserve hotel rooms.  But even beyond this

13  shortcoming, Plaintiffs' overpayment theory is implausible.  Plaintiffs do not, and cannot,

14  allege that they paid *anything* to Sabre (which merely provides reservation technology

15  behind the scenes) as opposed to the hotels themselves.  Nor do they plausibly allege that

16  the purchase price paid to hotels for rooms included some amount attributable to data

17  security at Sabre.  *See, e.g.*, *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 962 n.5 (D. Nev.

18  2015) ("Nor do Plaintiffs allege facts showing how the price they paid for such goods

19  incorporated some particular sum that was understood by both parties to be allocated

20     [5] Sabre questions the provenance of Plaintiffs' reliance on these studies and several

21  others cited in the SAC.  The citation to a purported FTC report in the SAC ¶ 45
    reads "*Id.* at 5" yet the preceding citation is not to any FTC report.  Moreover, the

22  footnote to that paragraph cites to a report "last visited in 2013."  Indeed, many of
    the reports mentioned in the SAC are equally curious, given that they indicate the

23  websites were last visited in 2015, 2013 or even 2009.  SAC ¶¶ 25, 32.  Although
    the SAC notes in a footnote that "All cited websites were last visited on July 11,

24  2017," (SAC n.1), that makes little sense because, if true, Plaintiffs should have
    updated the individual citations accordingly.  Moreover, even if true, the fact that

25  sources were last visited in July 2017 does not demonstrate that Plaintiffs revisited
    or reconfirmed the accuracy of those sources prior to filing the instant SAC in

26  November 2017 (and indeed, the DOJ website referenced in ¶ 32 results in a "page
    not found" error today).  The apparent implication is that these "allegations" were

27  merely lifted wholesale from some other source without independent review or
    verification.  *Compare*, *e.g.*, SAC ¶ 24 *with* Complaint ¶ 19, *Driscoll v. Trump Int'l

28  Hotels Mgmt. LLC*, No. 3:15-cv-1089, 2015 WL 6445198 (S.D. Ill. Oct. 2, 2015).

- 11 -

NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT, CASE NO. 2:17-cv-05149-SVW-AFM

towards the protection of customer data"); *In re Sci. Applications Int'l Corp. (SAIC)*

*Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 30 (D.D.C. 2014) (rejecting similar

theory because plaintiffs "have not alleged facts that show that the market value of their

insurance coverage (plus security services) was somehow less than what they paid"); *Khan*,

188 F. Supp. 3d at 533 (rejecting theory where plaintiff failed to allege any facts showing

she overpaid for surgery or would have used another provider had she been aware of the

lax data security).  Although it did not have to reach the issue, the Seventh Circuit has

nonetheless noted its "skepticism" of such a theory in *Lewert v. P.F. Chang's China Bistro,*

*Inc.*, 819 F.3d 963, 968 (7th Cir. 2016), and found the theory "dubious" in *Remijas v.*

*Neiman Marcus Group, LLC*, 794 F.3d 688, 694 (7th Cir. 2015).

      Moreover, Plaintiffs do not allege how it is that they were able to know what

behind-the-scenes reservation technology a given hotel even uses such that the security of

that system could have factored into Plaintiffs' decision to book hotel rooms and whether

security concerns would override other considerations for which consumers typically pay a

premium in booking hotel rooms (such as location, hotel features, and overall quality of

accommodations).  Plaintiffs allege that "had Sabre disclosed its lax security practices,

Plaintiffs and Class Members would have viewed the cost for booking a room through

them as less valuable and would either have attempted to book a room at a premium price

or not at all."  SAC ¶ 51.  Plaintiffs' theory thus appears to be that the higher priced a hotel

room, the greater the security of a third party vendor like Sabre, which is implausible (and

certainly not based on any factual allegations) and should be rejected.

      **d.  *Inadequate and Untimely Notification*.**  Plaintiffs summarily allege that they

could have suffered harm from the "untimely and inadequate notification of the data

breach."  SAC ¶ 53(c).  However, as discussed more fully below, Plaintiffs fail to allege

that Sabre had an obligation to notify Plaintiffs about the security incident in the first place.

*See infra* Section II.C.  But even if they had, Plaintiffs cannot use this argument to bolster

standing without showing some injury that resulted from the allegedly inadequate or

untimely *notification* as opposed to the injury purportedly caused by the intrusion itself.

- 12 -

NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT, CASE NO. 2:17-cv-05149-SVW-AFM

1   *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d

2   942, 1009-10 (S.D. Cal. 2014) (*Sony II*); *In re Adobe Sys. Inc. Privacy Litig.*, 66 F. Supp.

3   3d 1197, 1218 (N.D. Cal. 2014); *see also* Order at 6 n.1.  Plaintiffs still fail to do so.

4         **e.  *Theft or Disclosure of Information and Loss of Privacy*.**  Plaintiffs generally

5   allege some vague "loss of privacy," SAC ¶ 53(e), but fail to provide any detail about how

6   the security incident has resulted in a loss of privacy or how the alleged loss of privacy has

7   injured them.  Without such allegations, Plaintiffs have not pled facts sufficient to

8   demonstrate any injury-in-fact.  *See, e.g.*, *Zappos*, 108 F. Supp. 3d at 962 n.5 ("Even if

9   Plaintiffs adequately allege a loss of privacy, they have failed to show how that loss

10  amounts to a concrete and particularized injury.").

11        **f.  *Deprivation of Rights Under the UCL*.**  Plaintiffs appear to contend that they can

12  satisfy Article III's injury-in-fact requirement by alleging a "deprivation of rights" under

13  the UCL, even if they cannot articulate any concrete injury.  SAC ¶ 53(i).  The law is to the

14  contrary:  the mere "assertion of a statutory violation [of the UCL] is insufficient, by itself,

15  to establish Article III standing."  *Svenson v. Google, Inc.*, No. 13-CV-04080, 2016 WL

16  8943301, at *11 (N.D. Cal. Dec. 21, 2016).  The UCL provides a claim only for a plaintiff

17  who can allege some "lost money or property" and Plaintiffs "must establish that the

18  statutory violation resulted in particularized and concrete injury."  *Id.*; *see also Spokeo*, 136

19  S. Ct. at 1543 ("a plaintiff does not automatically satisf[y] the injury-in-fact requirement

20  whenever a statute grants a right and purports to authorize a suit to vindicate that right").

21        **g.  *The mere "nature of a data breach."***  Finally, Plaintiffs "allege" a legal

22  argument that the mere "nature of a data breach . . . makes it so that the threatened injury is

23  'certainly impending' as opposed to merely speculative" and that "whether anticipated

24  conduct or an anticipated injury is likely to happen after a breach is beside the point."

25  SAC ¶ 52 (citing *Spokeo*, 136 S. Ct. at 1548 and *Robins v. Spokeo, Inc.*, No. 11-56843,

26  2017 WL 3480695 (9th Cir. Aug. 15, 2017).  Plaintiffs appear to hope that this argument

27  will compensate for their inability to identify any present or likely future injury.  But this

28  argument is of course wrong:  whether a plaintiff has alleged a cognizable injury is *never*

- 13 -

"beside the point" in a data breach case or otherwise.  To the contrary, Article III has always required every plaintiff allege a "particularized" and "concrete" injury.  *Spokeo*, 136 S. Ct. at 1548; *Krottner*, 628 F. 3d at 1143.  The Court should reject this attempt to sidestep longstanding Article III jurisprudence.

### C.   Plaintiffs Add No Substantive Allegations Demonstrating Traceability

With respect to the second essential prong of the standing analysis—whether the alleged injury-in-fact is "fairly traceable" to the alleged unlawful conduct, *Lujan*, 504 U.S. at 590, the Court already concluded that "Benson alleges that nothing has happened to him and has provided no plausible allegations that anything could happen to him in the future[;] thus, he has no injury, much less one that can be 'fairly traceable' to the conduct of Sabre." Order at 4.  Nothing in the SAC changes this conclusion as to Benson and given that Plaintiff Hamidi alleges no allegations whatsoever, her allegations fall even shorter.

With respect to Smith, the Court previously concluded that she failed to allege any facts making it plausible that the unauthorized activity can be "fairly trace[d]" to the security incident here given that she failed to demonstrate a "logical connection between the two incidents."  Order at 4-5 (citing *Resnick v. AvMed, Inc.*, 693 F. 3d 1317, 1326-27 (11th Cir. 2012), *Stollenwerk v. Tri-West Health Care All.*, 254 F. App'x 664, 668 (9th Cir. 2007)).  Again, the SAC does nothing to alter this conclusion and does nothing to supply the missing information the Court previously identified.  Smith still does not "identify at which hotels she used her cards, whether those hotels were among the locations impacted by the incident, or when precisely the fraudulent charge occurred."  Order at 5. Like the FAC, the SAC "does not clarify whether the specific data breach affected all hotels or a few and in what time period." *Id.*  Indeed, as the Court noted,"[g]iven the frequency of data breaches and credit card fraud, and considering how many entities potentially come into possession of one's credit card information over the course of a year, any enterprising plaintiff could allege they experienced a fraudulent charge and attempt to connect it to any breach.  *Id.*

The only thing Smith adds to the SAC is a "screen shot" within Paragraph 38 with no

- 14 -

allegations as to what it is or what it purports to show, leaving Sabre and the Court to venture a guess.  The screen shot *appears* to show Smith emailing Target about a charge on her Target REDcard™.  But she still does not identify the date of the charge nor any allegations that connect it to the data security incident here.  Notably, she does not allege that she used this Target REDcard to book hotel rooms (and it is unlikely that she can make such allegations given that the Target REDcard usually can only be used at Target stores and Target.com).  *See* https://www.target.com/c/redcard/-/N-4tfyn (last visited Nov. 26, 2017). Thus, far from demonstrating a plausible connection between the alleged fraudulent charge and the security incident, her inclusion of this screenshot appears to *refute* any such connection.  As such, Smith remains unable to demonstrate traceability.

### D.    Plaintiffs Fail to Demonstrate Redressability

Plaintiffs also fail to demonstrate that their claimed injury (or lack thereof) is likely to be redressed by a favorable outcome.  *Lujan*, 504 U.S. at 560.  With no compensable economic injury, Plaintiffs are left only with their request for equitable relief, compelling Sabre to "utilize appropriate methods and policies with respect to consumer data collection."  SAC Prayer for Relief, C.  But since all three Plaintiffs claim that they are "former customers" (SAC ¶ 2 ) and do not demonstrate any present or likely future injury, they cannot demonstrate a "real and immediate threat of repeated injury" warranting injunctive relief at all.  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007); *see also Dugas*, 2016 WL 6523428, at *8 ("[A]n order requiring Defendant[] to enhance [its] cybersecurity in the future . . . will not provide any relief for past injuries.").

## II.    PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

In addition to lack of standing, this Court also determined that all ten claims were insufficiently pled warranting dismissal under Rule 12(b)(6).  Nine out of the ten claims in the SAC are virtually identical to the previously dismissed claims, with the only substantive change made to the claim for negligence.  Accordingly, Sabre addresses the negligence claim first.  With respect to the remaining nine claims that were left unchanged, Sabre

incorporates its previous arguments made in its original motion to dismiss and addresses the them only briefly below.

### A.      Plaintiffs' Amended Negligence Claim Remains Insufficiently Pled

The Court previously dismissed Plaintiffs' negligence claim as barred by the economic loss doctrine given that they do not allege any "special relationship" with Sabre.  In a strained attempt to save this claim, the SAC now alleges that "[a] special relationship exists between Defendants and the Consumer Plaintiffs." SAC ¶ 72.  Yet the sole basis for this new allegation is the assertion that "Defendants actively solicited Consumer Plaintiffs and the other Class members to use their PII in sales transactions at Defendants' *stores*." (emphasis added).  Of course, Plaintiffs have themselves consistently alleged that Sabre is not a brick and mortar retailer, but rather a digital-only platform.  *E.g.*, SAC ¶ 16.  Sabre does not operate any "stores"—and more importantly is not alleged to operate any "stores"— and thus this allegation is wholly irrelevant to the conduct at issue. Moreover, Plaintiffs make no attempt to show how *Sabre*, which operates a behind the scenes reservation platform, could possibly have "actively solicited" the Plaintiffs to do anything, even though they make that allegation.  Plaintiffs do not allege how they would even know the hotels for which Sabre provides the reservation technology, do not allege any interaction with Sabre whatsoever, and provide no specifics about the what, when, or where of this supposed "solicitation." (Yet again, Sabre is left to question what pre-filing investigation was conducted prior to the assertion of these factual allegations.)

Plaintiffs' allegation of a special relationship therefore is not only implausible but it makes no attempt to satisfy the multi-factor test set forth by the California Supreme Court in *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804 (1979). *See Sony II*, 903 F. Supp. 2d at 962 (dismissing negligence claim in data breach class action because "Plaintiffs' Consolidated Complaint has failed to adequately allege why the economic loss doctrine does not apply, in particular why the *J'Aire*

factors weigh in favor of finding a 'special relationship.'").  Indeed, the facts Plaintiffs do allege suggest a relationship between Plaintiffs and the hotels that are no different than "those envisioned in everyday consumer transactions" for which a special relationship does not apply.  *Id.* at 969.  And Sabre, as a behind-the-scenes reservation system whose identity is often unknown to the customer, is even further removed.  Thus, because Plaintiffs have not established a special relationship or any other exception to the economic loss doctrine, their claims for purely economic damages cannot be pursued under a negligence cause of action.  *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1064 (N.D. Cal. 2012).

## B. The Remaining Nine Claims are Identically Pled to the Previously Dismissed Claims

The remaining nine claims are taken verbatim from the previously dismissed FAC. Accordingly, rather than repeat the arguments made in the briefing in support of Sabre's prior motion to dismiss (ECF No. 24), Sabre incorporates them herein and instead only briefly addresses each of the remaining nine claims below:

**Contract-based claims (Counts I and IX).**  Plaintiffs offer no new allegations to counter the Court's original conclusion that "Plaintiffs' allegations fail to demonstrate privity of contract between Plaintiffs and Sabre."  Order at 5. Specifically, as with the FAC, throughout the SAC, Plaintiffs are clear that their dealings are with entities *other than Sabre,* (*see, e.g.*, SAC ¶¶ 1, 2, 31), rendering their breach-of-implied contract theory untenable.[6]  Plaintiffs also still fail to demonstrate the elements required to establish an implied-in-fact contract: mutual assent, offer and acceptance, and consideration.  *See* Order at 5. That is because, like the FAC, the SAC alleges only that what the hotels offered and what Plaintiffs accepted is to "book hotel rooms."  SAC ¶ 65.  Plaintiffs fail to allege an agreement

---

[6] *See Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 634 (9th Cir. 2010) ("Privity between the parties is a necessary element of an implied-in-fact contract claim."); *Windham at Carmel Mountain Ranch Ass'n v. Superior Court*, 109 Cal. App. 4th 1162, 1169 (2003) (dismissal appropriate when lack of privity is disclosed on the face of the complaint).

by Sabre to assume certain obligations regarding data security and data breach notification or any consideration for a particular level of security that would create an implied contract in the first instance, let alone demonstrate any breach of same.[7] And as the Court previously concluded, "[g]iven that Plaintiffs have established no implied contract with Sabre for a particular level of data security or breach notification, their claim for breach of good faith and fair dealing also necessarily fails" as well.  Order at 5 (citing *Harm v. Frasher*, 181 Cal. App. 2d 405, 418 (1960)).[8]  Finally, the viability of Plaintiffs' contract claims depend on their ability to allege actual damages causally connected to the data breach, and here they allege none.[9]

**Negligence Per Se (Count VIII).**  Despite previously representing to the Court in no uncertain terms that "Plaintiffs agree that negligence *per se* is evidentiary and agrees to withdraw Count VIII" (ECF 27 at 16 n.3) and despite the Court holding that "California law does not recognize such a claim,"[10] Plaintiffs

---

[7] *See Lovell v. P.F. Chang's China Bistro, Inc.*, No. C14-1152-RSL, 2015 WL 4940371, at *3 (W.D. Wash. Mar. 27, 2015) (plaintiffs alleged "no facts suggesting that [Plaintiffs] requested or that defendant made additional promises regarding loss prevention, and neither the circumstances nor common understanding give rise to an inference that the parties mutually intended to bind defendant to specific cybersecurity obligations"); *Katz v. Pershing, LLC*, 672 F.3d 64, 74 (1st Cir. 2012) (plaintiff had not "adequately alleged that she provided any bargained-for benefit or suffered any bargained-for detriment in exchange for the defendant's supposed promises"); *see also Longenecker-Wells v. Benecard Servs. Inc.*, No. 15-3538, 658 F. App'x 659, 662 (3d Cir. 2016) (receipt of personal information "did not create a contractual promise to safeguard that information, especially from third party hackers").

[8] *See also Corona v. Sony Pictures Entm't, Inc.*, No. 14-CV-09600 RGK (EX), 2015 WL 3916744, at *5-6 (C.D. Cal. June 15, 2015) (rejecting breach of good faith argument where, like here, plaintiffs could not demonstrate how being the victim of an intrusion was "intended to frustrate the agreed common purpose of the agreement").

[9] *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012); *Kuhns*, 868 F. 3d at 717-18.

[10] *See Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1285 (2006) (negligence per se "does not provide a private right of action for violation of a statute"); *accord DeBons v. Globus Med., Inc.*, No. 2:13-CV-08518-SVW-FFMX, 2014 WL 12495351, at *2 n.1 (C.D. Cal. Aug. 8, 2014), *aff'd*, 668 F. App'x 258 (9th Cir. 2016).

- 18 -

have again improperly asserted a claim for negligence *per se*.  Yet again, this also raises questions about compliance with pre-filing obligations.

**UCL Claims (Counts III, IV, and V).**  Plaintiffs have added no substantive allegations to their UCL claims and fail to respond to any of the deficiencies this Court previously noted.  To bring a claim under the UCL, Plaintiffs must show that they "suffered injury in fact and ha[ve] lost money or property."  Cal. Bus. & Prof. Code § 17204.  Here, as with the FAC, in the SAC, "Plaintiffs have alleged no loss of money or property attributable to the data breach."  Order at 6.  Plaintiff Benson still "alleges nothing whatsoever has happened to him"; Plaintiff Smith "alleges no monetary losses stemming from the alleged unauthorized charges"; and Plaintiff Hamidi alleges not one thing whatsoever connecting her to the security incident, let alone that she has been injured in any way.  Moreover, as discussed above, although the SAC includes a litany of harms that plaintiffs allege happened to "customers" — not one of these purported harms has happened to any of the specific named Plaintiffs here.  As such, Plaintiffs can demonstrate no loss of money or property and thus lack statutory standing under the UCL.

However, even setting aside Plaintiff's lack of statutory standing, Plaintiffs do not state a claim for "unlawful," "unfair," or "deceptive" business practices under the UCL.

Plaintiffs fail to allege a claim under the "unlawful" prong in Count III because, as with the FAC, Plaintiffs still "fail to allege any predicate violation of law."  With regard to Cal. Civ. Code § 1798.82, Plaintiffs again fail to distinguish between the breach notification requirements of § 1798.82(a) (where a business "owns or licenses" personal data of a California resident and must give notice to the resident directly) or § 1798.82(b) (where a business "maintains" that data but does not own it and must give notice only to owner or licensee).  Despite previously conceding that the "FAC omits reference to Section 1798.82, subsection (a) or (b) specifically," and representing that "this defect can be easily cured upon amendment," ECF 27 at 28, Plaintiffs still do not identify the statutory provision they contend applies, let alone plead facts demonstrating that Sabre had an obligation to notify them of the incident in the first instance.  Thus, not only have Plaintiffs

- 19 -

1   failed to "identify the particular section of the statute that was violated," they also fail to

2   "describe with reasonable particularity the facts supporting the violation," rendering the

3   UCL claim deficient.  *Baba v. Hewlett–Packard Co.*, No. C 09-05946 RS, 2010 WL

4   2486353, at *6 (N.D. Cal. June 16, 2010) (internal quotation marks omitted).

5        But even if Plaintiffs had adequately pleaded that § 1798.82(a) applies, they fail to

6   allege when Sabre should have notified them after its discovery of the incident or how the

7   disclosure was not done "in the most expedient time possible" considering "the legitimate

8   needs of law enforcement . . . or any measures necessary to determine the scope of the

9   breach and restore the reasonable integrity of the data system."  Cal. Civ. Code

10   § 1798.82(a).  Indeed, the notification Plaintiffs attach to the SAC states that Sabre had

11   engaged a cybersecurity expert to support its investigation, and that it had notified law

12   enforcement and hospitality customers.  *See* SAC Ex. C.

13        Similarly, Plaintiffs fail to allege how Sabre failed to employ "reasonable security

14   procedures" as required for a violation of Cal. Civ. Code § 1798.81.5.  Plaintiffs plead no

15   facts regarding the sufficiency or insufficiency of Sabre's data security practices.  In the

16   SAC, Plaintiffs have added allegations regarding the "threat of RAM scraper malware" and

17   general Payment Card Industry (PCI) data security standards (SAC ¶¶ 24-26), but nowhere

18   tie these allegations to Sabre's conduct or the incident here.  Absent these allegations, the

19   only thing Plaintiffs can point to is the fact of unauthorized access, essentially suggesting

20   that any time a company is the victim of theft by a third-party criminal, security

21   deficiencies should be implied.  Plaintiffs can provide no support for this approach.  To the

22   contrary: "[t]he implied premise that because data was hacked," Sabre's "protections must

23   have been inadequate is a 'naked assertion[] devoid of further factual enhancement' that

24   cannot survive a motion to dismiss."  *Kuhns v. Scottrade, Inc.*, 868 F. 3d 711, 717 (8th Cir.

25   2017) (quoting *Iqbal*, 556 U.S. at 678)).

26        Finally, and dispositively, Plaintiffs fail to plead any injury from the purported delay

27   in notice under § 1798.82 or from Sabre's alleged violation of § 1798.81.5.  *See* Cal. Civ.

28   Code § 1798.84 (to state a claim for damages, a plaintiff must show that she has been

- 20 -

"injured by a violation"); *see also Dugas*, 2016 WL 6523428, at *10 ("[P]roof of damages is a threshold hurdle for both CRA causes of action.").[11]  Having  again failed to allege any predicate violation of law, Plaintiffs' claim for "unlawful" practices should be dismissed.

Plaintiffs' claim for "unfair" practices in Count IV likewise remains deficient. Plaintiffs' allegation that Sabre engaged in conduct that is  "immoral, unethical, oppressive and unscrupulous, and/or substantially injurious to Plaintiffs and Class Members," SAC ¶¶ 91-92, merely parrots the "balancing test" under the case law and is thus insufficient under *Iqbal* and *Twombly*; Plaintiffs fail to allege how the public policy underlying their claim is "tethered to specific constitutional, statutory, or regulatory provisions" and thus cannot satisfy the "tethering test" set forth in *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010); and, given that Plaintiffs fail to allege *any* injury, let alone injury that is "substantial," they cannot satisfy the test under Section 5 of the FTC Act.  *Id.*

Finally, the SAC does nothing to remedy the deficiencies in Plaintiffs' claim for "deceptive practices" in Count V.  Plaintiffs still do not identify, as they must, a single "representation" or "advertisement" made by Sabre to the Plaintiffs, let alone one that is "fraudulent or deceptive," or relied on by Plaintiffs.  *See Kearns v. Ford Motor Co.*, 567 F. 3d 1120, 1126 (9th Cir. 2009); *Janney v. Mills*, 944 F. Supp. 2d 806, 818 (N.D. Cal. 2013); *In re Tobacco II Cases*, 46 Cal. 4th 298, 325 (2009).  Similarly, Plaintiffs fail to allege facts giving rise to a duty to disclose that could arguably support a fraudulent omissions claim.  *Sony II*, 996 F. Supp. 2d at 991.  As with the FAC, Plaintiffs still do not allege exclusive knowledge when they specifically allege that Sabre "fail[ed] to discover

---

[11] *See, e.g., Adobe*, 66 F. Supp. 3d at 1218 ("[B]y failing to allege any injury resulting from a failure to provide reasonable notification of the 2013 data breach, Plaintiffs have not plausibly alleged that they have standing to pursue a Section 1798.82 claim."); *Sony II*, 996 F. Supp. 2d 942, 965 (S.D. Cal. 2014) (dismissing delayed disclosure claim where plaintiffs "failed to allege that their injuries...were proximately caused by [the] alleged untimely delay"); *In re Barnes & Noble Pin Pad Litig.*, No. 12-CV-08617, 2016 WL 5720370, at *8 (N.D. Ill. Oct. 3, 2016) ("to establish an injury under the California Security Breach Notification Act, a plaintiff must allege that her injuries were caused by the delay between the time she was notified of the breach and the time she contends she should have been notified.").

1   the security breach within [a] reasonable time," SAC ¶ 76, nor do they offer anything but

2   generalized allegations in support of active concealment. *See Hovsepian v. Apple, Inc.*,

3   No. 08-5788 JF (PVT), 2009 WL 5069144, at *3 (N.D. Cal. Dec. 17, 2009).

4                                       **CONCLUSION**

5          Plaintiffs were given an opportunity to remedy the deficiencies this Court previously

6   identified.  Given the claims asserted in the SAC (which is now the third attempt to plead a

7   viable complaint in this case), it is now clear that Plaintiffs are unable to do so.

8   Accordingly, the SAC should again be dismissed in its entirety, this time with prejudice.

9

10                                      Respectfully submitted,

11  Dated:  November 28, 2017           ARNOLD & PORTER KAYE SCHOLER LLP

12

13                                      By:    /s/ Kenneth L. Chernof
                                        Kenneth L. Chernof (SBN 156187)

14

15                                      *Attorneys for Sabre Corporation and Sabre
                                        GLBL Inc.*

16

17

18

19

20

21

22

23

24

25

26

27

28